[No. 15809.    Department One.    August 9, 1920.]

MAUDE C. BEEBE, *Appellant,* v. L. C. ALLISON,
*Respondent.*[1]

PARTNERSHIP (5, 18)—CREATION OF RELATION—AGREEMENT WITH
MEMBER OF FIRM. The voluntary consent of all members being re-
quired to form a partnership, a third person cannot become a mem-
ber thereof without concurrence of all members of the firm.

SAME (8)—CREATION OF RELATION—ESTOPPEL—DECLARATIONS OF
PARTY. Declarations made by a person under the belief that he was
a member òf a partnership do not constitute him a partner by estop-
pel or otherwise as to the rights of third persons, it not being shown
that credit was extended upon the faith of his being a member of
the firm.

APPEAL (416)—REVIEW—FINDINGS. Where a case is brought to
the supreme court upon the findings alone, the respondent is en-
titled to the most favorable inference that can be drawn therefrom,
there being a presumption of regularity and of sufficient facts to
sustain the judgment..

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered January 10, 1920,
upon findings in favor of the defendant, in an action
for rent, tried to the court. Affirmed.

*Poe & Falknor,* for appellant.

*Chadwick, McMicken, Ramsey & Rupp* and *Mau-
rice R. McMicken,* for respondent.

PARKER, J.—The plaintiff, Beebe, commenced this
action in the superior court for King county, seeking
recovery of $226.66, due to her from F. L. Main &
Company, copartners, for rent of certain premises oc-
cupied by them as her tenants. Allison being the only
defendant served with summons in the action, and
there being no dispute as to the firm of F. L. Main &
Company owing the plaintiff rent in that sum, upon

[1]Reported in 192 Pac. 17.

the trial in the superior court, the sole controversy became one of whether or not the defendant Allison was a member of the defendant partnership so as to render him liable for the payment of the rent. Trial to the court without a jury resulted in findings and judgment in favor of Allison, absolving him from liability, upon the ground that he was not a member of the defendant partnership. From this disposition of the cause, the plaintiff has appealed to this court.

The facts to be here considered are all embodied in the trial court's findings, there being no statement of facts in the record before us. They may be summarized as follows: In October, 1918, the exact date not appearing in the record, a writing was signed by F. L. Main and defendant Allison, and not by any other member of the firm of F. L. Main & Company, the whole of which reads as follows:

> "F. L. Main & Company
> "Stocks & Bonds
> "Suite 355 Empire Bldg.,
> "Seattle, Washington
> "F. L. Main, Gen. Mgr.
> "Agreement.

"It is hereby understood and agreed that L. C. Allison, party of the first part in this agreement, is desirous of procuring for himself an interest in F. L. Main & Company, party of the second part, a co-partnership operated in Seattle, Washington, 355 Empire Building, by F. L. Main, C. B. Collins, B. S. Dennison, all of the city of Seattle.

"It is understood and agreed that, for and in consideration of one ($1) dollar and other valuable services rendered, that said L. C. Allison of the city of Los Angeles, California, shall and does hereby purchase a one-fourth (¼) interest in the said F. L. Main & Company, to be operated as a co-partnership, the said four being L. C. Allison, F. L. Main, C. B. Collins, and B. S. Dennison.

"The profits of said F. L. Main & Company are to be divided equally among the said four at any time which may be mutually agreed upon and it is further understood and agreed that neither one or anyone of said firm may draw a dividend without the one drawing, desiring a dividend, seeing that an equal amount of money is drawn and placed to the credit in any bank designated by them for the remaining members absent, and it is further agreed that this contract pertains to all business done in the future of this firm of this date on the Liberty Low Grade Fuel Corporation or any other propositions which may be taken on or underwritten by the said F. L. Main & Company which may be mutually agreed upon by all of the parties hereto.

"Witness:              Signed  F. L. Main,
  "Daisy Evans         Signed  L. C. Allison."

When Allison signed this writing he was in California, Main evidently signing it while in Seattle. After the signing of the writing, Allison came to Seattle, arriving there on November 4, 1918, from which time until November 9, 1918, he occupied desk room in the office of F. L. Main & Company, laboring under the impression that he was a partner in the firm, and undertaking to "negotiate contracts and make deals" in the name of the firm, and "announced to various parties that he was a partner of defendant F. L. Main & Company, although none of said statements are shown to have been made to plaintiff or to any one representing the plaintiff." On November 9, 1918, which it will be noticed was only five days after Allison came to Seattle, he "paid to F. L. Main between $600 and $1,000, and which sum said L. C. Allison presumed he was paying to F. L. Main and other partners of F. L. Main & Co., at which time said instrument hereinbefore copied was marked 'cancelled,' together with the other contracts." What the other contracts were is not shown; nor is the purpose of the payment

so made shown. It is evident, however, that all further steps looking to Allison's becoming a member of the partnership then ceased. The findings contain no suggestion that Allison thereafter made any statement to any one, or that he did any act in any way evidencing his partnership relation in the firm. The rent sought to be recovered was for the occupancy by F. L. Main & Company of the property of the plaintiff between the first and seventeenth days of November, 1918, which rent "became due on the first day of November, 1918"; which date, it will be noticed, was before Allison had in any manner assumed the relationship of a partner in the firm. It is apparent that Allison learned on November ninth that the contemplated partnership agreement had not been signed by the other members of the firm, and that he and Main then cancelled the writing and abandoned all further efforts looking to Allison's becoming a member of the firm.

The most elementary rules of partnership law, it seems to us, render it plain, in the light of these facts, that Allison did not become a member of the partnership by virtue of this writing signed by Allison and Main, or by virtue of anything he said or did, so as to render him liable to the plaintiff. In *Burnett v. Snyder*, 76 N. Y. 344, we have a case almost exactly like this. In holding that a partnership could not be so created, Judge Danforth, speaking for the court, said:

"It required the voluntary consent of all these persons to create the firm; and it seems very clear that the declarations of any number less than the whole, however emphatic, that another person was also a member, could have no effect, either upon the firm or upon that person, for the simple reason that it would be untrue. It is also clear that the declaration of

Snyder could not affect the firm or himself, unless (as is not the case here) he or the firm had been trusted on account of or by reason of that declaration. This is but reiterating the principle of law well established, that as a partnership can commence only by voluntary contract of the parties, so when it is once formed, no third person can be introduced into the firm as a partner, without the concurrence of all the persons who compose the original firm. The consent of one or more to his introduction is not sufficient; (*Kingman v. Spurr,* 7 Pick., 235; *Murray v. Kneeland,* 14 J. R. 318; *Marquand v. N. Y. Manuf. Co.,* 17 id. 534), for, otherwise, says Story, 'it would, in effect, amount to a right of one or more of the partners to change the nature, and terms, and obligations of the original contract, and to take away the *delectus personae,* which is essential to the constitution of a partnership.' (Story, Partnership, § 5).''

See, also, Rowley, Partnership, §§ 49, 552.

These authorities are not only in point in Allison's favor on the question of his becoming a partner by virtue of the writing signed by him and Main, but also on the point that Allison's statements and acts during the five days he was in the office of the firm did not constitute him a partner by estoppel or otherwise as to the rights of the plaintiff, since manifestly the plaintiff's right to the rent sued for accrued before Allison came to Seattle, or said or did anything in the assumption of a partnership relation in the firm. Nor can it be said that the plaintiff extended credit for the rent beyond the first day of November upon the faith of Allison being a member of the firm, for it is not shown that the plaintiff knew of Allison's assumption of any partnership relation in the firm. Indeed, the findings suggest to the contrary. We feel warranted in so assuming because of the general rule so well stated by Judge Chadwick, speaking for the court in *Clark v. Fotheringham,* 100 Wash. 12, 170 Pac. 323, as follows:

"Where a case is brought to this court upon the findings alone, a respondent is entitled to the most favorable inferences that can be drawn from them. This is no more than to say that a presumption of regularity and of sufficient facts to sustain the judgment of the court attends it."

The judgment is affirmed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.