[No. 17277-8-I.   Division One.   April 11, 1988.]

DOUG OBERT, ET AL, *Respondents,* v. ENVIRONMENTAL RESEARCH AND DEVELOPMENT CORPORATION, ET AL, *Appellants.*

*Charles Wiggins* and *Edwards & Barbieri,* for appellants.

*Earl P. Lasher* and *Lasher & Johnson,* for respondents.

PEKELIS, J.—Environmental Research and Development Corporation (ERADCO), general partner of Campus Park Associates, a real estate limited partnership, appeals from certain portions of a judgment in favor of the limited partners. ERADCO claims that the trial court erred in (1) holding that ERADCO had been effectively removed as general partner and properly replaced by Pace Corporation; (2) finding that ERADCO had breached a number of fiduciary duties toward the limited partners; (3) holding that ERADCO was not entitled to receive a 25 percent interest in the partnership profits; (4) denying ERADCO 1 percent of the net value of the partnership; and (5) denying ERAD CO's motion for a new trial.

The limited partners cross-appeal, claiming that the trial court erred in (1) awarding ERADCO certain partnership expenses; (2) holding that ERADCO did not violate the securities act; (3) holding that ERADCO did not violate the Consumer Protection Act; and (4) failing to award the limited partners prejudgment interest and attorney's fees. We affirm in part and reverse in part.

I
FACTS

This action was brought in May of 1984 by 28 limited partners of Campus Park Associates against ERADCO, the general partner of Campus Park, and Patrick Easter, who owns ERADCO. ERADCO organized the Campus Park limited partnership in 1978 and sold units through the use of a private placement memorandum. The partnership units were offered under a claim of exemption from registration filed with the Securities Division, pursuant to RCW 21.20.320(1). Each limited partner entered into the certificate and agreement of limited partnership.

The primary asset of Campus Park is an 83–acre parcel of land located in Federal Way, Washington, which was

purchased for $2,472,333 in December 1978. The subject property remained raw land and was never the subject of any land use planning, zoning, or environmental action. No roads or utilities were constructed or installed, and no sales were completed.

On May 4, 1984, after a number of incidents involving alleged breaches of fiduciary duties by ERADCO, 74.4 percent of the limited partners voted by proxy to remove ERADCO and elect a successor general partner, the Pace Corporation. An amended certificate of limited partnership was filed on May 5, 1984, reflecting the removal and replacement of the general partner.

On May 7, 1984, the limited partners filed their complaint in this action, alleging, *inter alia,* breaches of the limited partnership agreement, fraud and misrepresentation, violations of RCW 21.20.010, the anti–fraud provision of the securities act, and violations of fiduciary duties. The limited partners sought to enjoin ERADCO from taking any further actions as general partner and an order compelling ERADCO to turn over books and records and provide an accounting. They further prayed for damages, termination of all contractual liabilities under the partnership agreement, and attorney's fees and costs.[1]

ERADCO answered, alleging improper removal and requesting reinstatement or dissolution of the partnership. ERADCO further sought a 25 percent interest in the net value of the partnership, and "reimbursable expenses" as provided for in the partnership agreement.

The limited partners brought a motion for a declaratory or partial summary judgment ratifying their action in removing ERADCO and appointing Pace. Partial summary judgment was granted. After a 4–week trial, the trial court again ratified the removal of ERADCO and substitution of Pace and held that by its acts ERADCO had breached a

---

[1]The plaintiffs later amended their complaint to add a request for refund of land management fees, a claim for damages for failure to provide audited financial statement, and a claim for breach of the Consumer Protection Act.

number of fiduciary duties to the limited partners. While the trial court held that these breaches did not constitute violations of the securities act or the Consumer Protection Act, it denied ERADCO's claim for a 25 percent cash distribution, awarding it only its expenses and a refund with interest of its capital contribution. After the court's decision was rendered, ERADCO made a motion for a new trial under CR 59(a)(1). The basis for the motion was a conversation between the judge and attorney David Hoff, in which the judge asked for recommended sources of partnership law. The motion was denied. Both sides bring this timely appeal.

## II
### ANALYSIS
### A. Removal of General Partner

ERADCO argues that its removal as general partner was ineffective because the vote was not unanimous, no meeting was held for the vote, some limited partners did not receive notice of the vote, and ERADCO was neither notified of the vote nor given an opportunity to be heard regarding the issue of its removal. It also argues that these failures to notify ERADCO evidence bad faith and were breaches of the limited partners' fiduciary duties to ERADCO.

The limited partnership agreement provides as follows:

14. Rights, Powers and Voting Rights of Limited Partners.

. . .

14.2 Limited Partners shall only have the right to vote upon the following matters affecting the basic structure of the Partnership:

14.2.1 Removal of the General Partner for cause;
14.2.2 Election of a successor General Partner;

. . .

14.7 Matters upon which the Limited Partners may vote shall require a majority vote, as defined in paragraph 3.8 of this Agreement, to pass and become effective.

Paragraph 3.8 defines "majority vote" as 66 percent of the outstanding units. Paragraph 14.6 provides that voting may

be by "written proxy" and that state laws "pertaining to corporate proxies shall govern all Partnership proxies."

There is nothing in the partnership agreement that requires that a meeting be held when voting upon removal or that all partners should receive notice of such a vote. We reject the argument made by ERADCO that the reference to state laws pertaining to corporate proxies implicates meeting notice requirements. The agreement allows for voting by "written proxy" and provides that a majority vote, *i.e.*, 66 percent, is sufficient. Thus, since 74.4 percent of the limited partners voted properly to remove ERADCO as general partner, we hold that the removal was valid, and we affirm the trial court on this issue.

## B. Substitution of General Partner

ERADCO argues that its removal triggered the dissolution of the partnership since the election of a successor general partner was not unanimous.[2] The limited partners reply that the agreement is ambiguous on this point, and that the ambiguity must be construed against ERADCO, who drafted the agreement. Thus, they contend that their substitution of Pace for ERADCO is valid.

In paragraph 14.2.2 of the agreement, the limited partners are given the right to vote on the election of a successor general partner. Paragraph 14.7 indicates that only a majority vote, defined as 66 percent, is required, while paragraph 18.1.2 requires a unanimous vote. The private placement memorandum contains a similar inconsistency.

The general rule is that ambiguities of any contract are to be resolved against the drafter. *Guy Stickney, Inc. v. Underwood,* 67 Wn.2d 824, 827, 410 P.2d 7 (1966). Application of this rule would allow us to dispose of this issue by construing the agreement to require only a majority vote, were it not for Washington's limited partnership law which

---

[2]Testimony was presented at both the summary judgment proceeding and trial that at least two limited partners who were loyal to ERADCO would *not*, had they been contacted, have voted in favor of replacing ERADCO with Pace.

seems to compel a different result. RCW 25.10.440 provides as follows:

A limited partnership *is dissolved* and its affairs shall be wound up upon the happening of the first to occur of the following:

. . .

(4) *An event of withdrawal* of a general partner unless at the time there is at least one other general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved and is not required to be wound up by reason of any event of withdrawal if, within ninety days after the withdrawal, all partners agree in writing to continue the business of the limited partnership and to the appointment of one or more additional general partners if necessary or desired . . .

(Italics ours.) An "event of withdrawal" is defined by RCW 25.10.230(3) as removal of a general partner in accordance with the partnership agreement.

A related provision, RCW 25.10.220, which contemplates the admission of additional general partners, rather than the substitution of a general partner, provides: "*Unless otherwise provided in the partnership agreement,* . . . additional general partners may be admitted only with the specific written consent of each partner." (Italics ours.) The "unless" clause was added to the Washington version of the 1976 Revised Uniform Limited Partnership Act (RULPA) adopted as RCW 25.10 by our Legislature in 1981. *Compare* Laws of 1981, ch. 51, § 22 *with* Revised Uniform Limited Partnership Act § 401 & comment, 6 U.L.A. 295 (Supp. 1987).

It is apparent that our Legislature made a positive decision in enacting RCW 25.10.220 to allow the partnership agreement to control. The fact that it did not do so in enacting RCW 25.10.440(4) evidences a legislative intent that all limited partners consent to the substitution of a general partner when no other general partner remains,

whether there be an agreement to the contrary or not.[3]

In construing the section of the RULPA upon which RCW 25.10.220 is based, one court has said: "The purpose of that section . . . is to give each limited partner, who has no voice in the operation of the partnership business, the opportunity to prevent his investment from falling into the hands of an unknown or unwanted general partner." *Wasserman v. Wasserman*, 7 Mass. App. Ct. 167, 175, 386 N.E.2d 783, 788, 6 A.L.R.4th 1268 (1979). The same policy applies with even greater force when one contemplates not the admission of *additional* general partners, but rather, the *substitution* of a new general partner where no other general partners remain.[4] *Cf.* RCW 25.04.180(7); *Beebe v. Allison*, 112 Wash. 145, 192 P. 17 (1920) (in general partnership context, all partners must consent to the admission of a new member).

We conclude, therefore, based on the legislative history and general principles of partnership law, that under RCW 25.10.440(4) dissolution occurs by operation of law where no general partner remains following the removal of a general partner, if there has been no unanimous approval of a substitute general partner within 90 days.[5] Thus, we hold

---

[3]Moreover, the Legislature had a second opportunity at the time of its 1987 amendments to RCW 25.10.440 to allow something less than unanimous consent by the limited partners. It did not choose to do so.

[4]There has been no judicial interpretation of RCW 25.10.440(4), and research revealed no cases on point from jurisdictions with analogous provisions. However, one commentator interprets this section to mean that when there is no remaining general partner, unanimity is required in order to avoid dissolution, and that the provision is *not* contractually modifiable. Basile, *Admission of Additional and Substitute General Partners to a Limited Partnership: A Proposal for Freedom of Contract*, 1984 Ariz. St. L.J. 235, 243–44, 254; *see also* Kessler, *The New Uniform Limited Partnership Act: A Critique*, 48 Fordham L. Rev. 159, 178–79 (1979).

[5]The dissent's result–oriented approach would require the rewriting of more than one section of RCW 25.10. For example, the dissent concludes that RCW 25.10.440(4) should be limited to situations where there are at least two general

that Campus Park Associates was dissolved, and the partnership must now proceed to wind up its affairs.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

COLEMAN, A.C.J., concurs.

RINGOLD, J.* (dissenting)—I disagree with the majority holding that RCW 25.10.440 mandates the nonjudicial dissolution of the partnership. The effect of the majority's opinion is to hold that, upon the removal of the general partner and the failure of "all" the partners to provide a written agreement appointing the Pace Corporation as the successor general partner, the limited partnership is dissolved.

The majority misperceives the meaning and purpose of the Washington statutes and comes to an unreasonable result.

### STATUTE AND PARTNERSHIP AGREEMENT

The following statutes and sections of the partnership agreement are pertinent.

RCW 25.10.220:

Admission of additional general partners. Unless otherwise provided in the partnership agreement, after the filing of a limited partnership's original certificate of limited partnership, additional general partners may be admitted only with the specific written consent of each partner.

RCW 25.10.230:

Events of withdrawal of general partner. Except as approved by the specific written consent of all partners at the time, a person ceases to be a general partner of a

---

partners because it includes the phrase "an event of withdrawal of a general partner." (Italics ours.) That interpretation would render meaningless the subsection's next clause, "unless at the time there is at least one other general partner".

*The Honorable Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 26.

limited partnership upon the happening of any of the following events:

. . .

(2) The general partner ceases to be a member of the limited partnership as provided in RCW 25.10.400;

(3) The general partner is removed as a general partner in accordance with the partnership agreement;

. . .

RCW 25.10.440:

Nonjudicial dissolution. A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:

. . .

(2) Upon the happening of events specified in the partnership agreement;

(3) Written consent of all partners;

(4) An event of withdrawal of a general partner unless at the time there is at least one other general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved and is not required to be wound up by reason of any event of withdrawal if, within ninety days after the withdrawal, all partners agree in writing to continue the business of the limited partnership and to the appointment of one or more additional general partners if necessary or desired; or

. . .

The certificate and agreement of limited partnership of Campus Park Associates provides:

14. Rights, Powers and Voting Rights of Limited Partners.

14.1 Limited Partners shall take no part in or interfere in any manner with the control, conduct or operation of the Partnership and shall have no right or authority to act for or bind the Partnership.

14.2 Limited Partners shall only have the right to vote upon the following matters affecting the basic structure of the Partnership:

14.2.1 Removal of the General Partner for cause;

14.2.2 Election of a successor General Partner;

14.2.3 Termination and dissolution of the Partnership;

. . .

14.7 Matters upon which the Limited Partners may vote shall require a majority vote, as defined in paragraph 3.8 of this Agreement, to pass and become effective.

Section 18 of the agreement headed "Termination and Dissolution of the Partnership" provides as follows:

18.1 The Partnership shall be terminated and dissolved upon the happening of any of the following events:

. . .

18.1.2 The expulsion of the General Partner unless, prior to the effective date upon which the General Partner is to be expelled, a successor General Partner is elected by a unanimous vote of the holders of the outstanding units, which successor elects to continue the business of the Partnership;

. . .

The partnership agreement at paragraph 14.7 provides that a majority vote is as defined in paragraph 3.8 of the agreement, *i.e.*, 66 percent of the outstanding units.

The majority correctly analyzes the agreement as being ambiguous and requiring a 66 percent vote to discharge the general partner, but wrongfully concludes that Washington's limited partnership act compels dissolution when a successor is elected by less than a unanimous vote.

Any statutory interpretation that would render an unreasonable and illogical consequence should be avoided. *Puyallup v. Pacific Northwest Bell Tel. Co.*, 98 Wn.2d 443, 450, 656 P.2d 1035 (1982). The majority's interpretation mandates such a result. It forces Campus Park into dissolution 3 years after the replacement of ERADCO as general partner. During that period the partnership has functioned to the profit and benefit of the limited partners, in whose nominal interest the majority would dissolve the partnership. The limited partners have resisted dissolution in this action, so it cannot be said that they desire dissolution or that it would protect their interest. The majority allows two limited partners to frustrate the actions of 74.4 percent of the ownership of the limited partnership units by forcing

an unwanted, costly, and undesirable dissolution of the partnership. The majority's result engenders additional burdens on the courts with attendant costs and expenses for attorneys fees upon the parties. This is an unreasonable outcome. This cannot be the purpose of the limited partnership act.

Furthermore, the majority's statutory interpretation effectively eliminates limited partners' rights to remove and replace a general partner for cause by not permitting such removal if but one limited partner dissents. A general partner may also be a limited partner. *See* RCW 25.10.250. By construing the statutes to require unanimous approval by the limited partners to replace a general partner, a person who is both the general and a limited partner could prevent the removal of the general partner by denying approval of a replacement. In this situation, where the general partner has improperly performed its duties, the majority forces on limited partners choices between Scylla and Charybdis, *i.e.,* either to dissolve the partnership or to persevere with the general partner. This result does not protect the interests of the limited partners.

The statutes upon which the majority relies instead should be construed to apply only to those situations where there is or has been more than one general partner or where there is one general partner and the general partner desires to appoint an additional general partner. Such a construction is consistent with the language of the statutes and the majority's authorities. RCW 25.10.440(4) concerns "[a]n event of withdrawal of *a* general partner" (italics mine) rather than *the* general partner. By referring to "a" general partner the section suggests that it is limited to situations where there is more than one general partner. Under this construction the section operates to prevent a general partner from replacing a general partner without the consent of all of the limited partners.

The majority relies upon *Wasserman v. Wasserman,* 7 Mass. App. Ct. 167, 386 N.E.2d 783, 788, 6 A.L.R.4th 1268 (1979). *Wasserman,* however, concerns the addition of

another general partner by appointment of the general partner. The court's rationale was that the purpose of Massachusetts' statutory equivalent to RCW 25.10.220 is to prevent the limited partners' investment from falling into the hands of an unknown or unwanted general partner. The American Law Reports annotation to *Wasserman* is entitled "Limited Partnership: Sufficiency of Procedure for Designating or Admitting *Additional* General Partner." (Italics mine.) The annotator states

> In a case decided under the Uniform Limited Partnership Act, which provides that a general partner in a limited partnership has no authority to admit a new general partner without the written consent of all the limited partners, the court in Wasserman v Wasserman held that a partnership agreement which granted the general partner in a limited partnership the authority to designate as a new general partner, without the approval of the limited partners, any officer or director of two named corporations constituted the written consent required by the Uniform Act.

(Citation omitted.) Annot., 6 A.L.R.4th 1278 (1981).

*Wasserman* accordingly held that a person who was designated by the general as his successor was properly appointed. The court reasoned that the act leaves the members of a limited partnership free to determine their rights with respect to each other by any contractual agreement that does not violate public policy or the common law. The court explained that the purpose of the act "is to give each limited partner, who has no voice in the operation of the partnership business, the opportunity to prevent his investment from falling into the hands of an unknown or unwanted general partner." *Wasserman,* at 175.

The majority's reference to *Beebe v. Allison,* 112 Wash. 145, 192 P. 17 (1920) and RCW 25.04.180(7) is meaningless because those authorities relate only to the formation and dissolution of a general partnership.

It is evident that the purpose of RCW 25.10.440(4) is to preclude the general partner from adding additional general

partners and thus exceeding its delegated power. Accordingly, I dissent from the majority's determination that Campus Park Associates was dissolved, and would hold that Pace Corporation was properly elected as the successor general partner.

Review granted by Supreme Court October 4, 1988.