[No. 55351–3. En Banc. April 13, 1989.]

DOUG OBERT, ET AL, *Petitioners,* v. ENVIRONMENTAL RESEARCH AND DEVELOPMENT CORPORATION, ET AL, *Respondents.*

324

*Edwards & Barbieri,* by *Charles K. Wiggins,* for petitioners.

*Earl P. Lasher* and *Margo T. Keller,* for respondents.

PEARSON, J.—A portion of the limited partners of a limited partnership instituted this action against their general

partner alleging, *inter alia,* breaches of the limited partnership agreement and violations of fiduciary duties. Praying for damages and termination of all contractual liabilities under the partnership agreement, this action was brought after 74.4 percent of the limited partners voted by proxy to remove Environmental Research and Development Corporation (ERADCO) and elect a new general partner. ERADCO answered, alleging improper removal and requesting reinstatement as the general partner or, in the alternative, dissolution of the partnership. Additionally, ERADCO prayed for judgment equal to a 25 percent interest in the net value of the partnership, plus expenses advanced on behalf of the partnership, all pursuant to the partnership agreement.

### ISSUES

This case presents the following issues:

1. Did the Court of Appeals err in ordering the dissolution of the limited partnership?

2. Is a general partner that breached its fiduciary duty to the limited partners entitled to receive specific performance of the limited partnership agreement and thereby collect a 25 percent share in the profits of the limited partnership?

3. May limited partners validly remove the general partner without holding a meeting, without notifying the general partner, and without notifying all limited partners?

4. Where the Court of Appeals has reversed a trial court decision, may parties continue to act in reliance on the trial court decision pending receipt of the mandate?

### FACTS

Plaintiffs are approximately 50 entities and individuals all of whom are limited partners of the Campus Park Associates Limited Partnership (Campus Park LP), a Washington limited partnership. The defendant, ERADCO, is a Washington corporation whose stock is owned entirely by Patrick and Rosemary Easter.

The primary asset of the Campus Park LP is an 83–acre parcel of rural land located in Federal Way, Washington, which was purchased for $2,472,333 in December 1978. In 1978, ERADCO sold limited partnership units of the Campus Park LP to the plaintiffs through the use of a private placement memorandum. At the time of the purchase of the partnership units, each of the Campus Park LP limited partners and ERADCO entered into a limited partnership agreement.

ERADCO acted as the general partner of Campus Park LP from its inception in 1978 until May 5, 1984. In May 1984, 74.4 percent of the ownership of Campus Park LP amended the limited partnership agreement and voted by proxy to remove ERADCO as general partner, electing the Pace Corporation (Pace), a Washington corporation, as successor general partner. On or about May 5, 1984, an amended certificate of limited partnership was filed with the State of Washington amending the limited partnership agreement and replacing ERADCO with Pace as the new general partner. A King County Superior Court Judge confirmed the replacement of ERADCO by Pace on November 27, 1984. A later amendment to the certificate of limited partnership was made, naming Robert Gerend as an additional co–general partner of the Campus Park LP.

At the bench trial, the court found that prior to its removal, ERADCO had breached several fiduciary duties owed to the Campus Park LP limited partners, specifically:

(a) ERADCO failed to provide audited financial statements as required by the Limited Partnership Agreement. Some financial statements were eventually produced, but they were not timely. . . .

(b) ERADCO failed to pay real estate taxes on the Campus Park property for the years 1979, 1980, 1981 and 1982 until late 1982. This was contrary to the terms of the Deed of Trust, placing the limited partnership in default of its deed to its seller.

(c) Defendants failed to keep a reserve account as set forth in the Limited Partnership Agreement for the payment of taxes and assessments.

(d) Defendants failed to keep adequate land management time records for the "actual time" it alleges it spent in managing the limited partnership property. This timekeeping requirement was provided for in the Limited Partnership Agreement and represented in the Private Placement Memorandum. . . . Finally, some of the entries were fictitious, leaving an overall lack of confidence in ERADCO's attention to this fiduciary duty.

(e) Defendants borrowed monies from the limited partnership's bank, Westside Federal Savings and Loan, for its own purposes and pledged as collateral the separate limited partnership savings accounts of Campus Park. Also used as collateral to secure their borrowings were the Limited Partnership accounts of other limited partnerships. Also as part of the collateral agreement with the bank, ERADCO and Easter agreed to restrict the use of those limited partner accounts for the duration of its loans. The monies were kept in a five and one-half percent (5½ %) interest bearing account rather than being placed in an account earning interest at the current market rate of at least twelve percent (12%) or more. This practice started in May 1981 with the Campus Park account and terminated May 1982 at the request of the Campus Park limited partners. ERADCO continues to use other limited partnership savings accounts as collateral for its separate borrowings. The State Securities Division asked ERADCO and Easter to stop this practice but it has continued the loans against the limited partnership savings accounts. [The trial court found that the amount of damage to the limited partners in lost interest as a result of these actions was $2,100.]

(f) In December 1983 ERADCO commingled the separate monies of the Campus Park limited partnership with its own monies in its corporate account at the First Interstate Bank. One Hundred Fifty–five Thousand Dollars ($155,000) of limited partnership funds were transferred from the Campus Park savings account at Westside Federal Savings and Loan into an ERADCO corporate checking and savings account, which account had approximately One Hundred Fifty Dollars ($150) of other funds in it. ERADCO commingled Campus Park limited partnership funds with its own with the clear purpose of inflating ERADCO's own financial statement

for its own borrowings. This commingling was not disclosed to the limited partners at the time and was not reflected in any audited or unaudited financial statements of either ERADCO or Campus Park. It also subjected those funds to unlimited risk as ERADCO had not paid its withholding taxes to the IRS, which had begun action to collect the overdue taxes.

In addition, the trial court found that ERADCO was unable to substantiate approximately 75 percent of its land management fees that the limited partners had already paid ERADCO, an amount totaling $127,181.32.

Despite these breaches, ERADCO did make capital contributions to the Campus Park LP in the amount of $24,076.83, a portion of the amount required under the limited partnership agreement. Accordingly, the trial court found that ERADCO was entitled to recover its capital contribution, plus interest in the amount of $4,700.50. In further compliance with the limited partnership agreement, ERADCO performed "program management activities" and "land management activities", and also attempted to market the Campus Park LP real property. The trial court found that in performing its management duties, ERADCO advanced $169,790 in expenses on behalf of the Campus Park LP that are recoverable from the Campus Park limited partners under paragraph 9 of the limited partnership agreement. Finally, the trial court confirmed a total of $1,800 in terms against ERADCO awarded throughout the litigation.

The trial court concluded as a matter of law that the Campus Park general partner could be removed for cause upon a 66 percent vote, and thus confirmed the previous court order confirming ERADCO's removal and Pace's replacement as general partner. Further, the trial court held that as a result of ERADCO's fiduciary breaches it was not entitled to specific performance of the limited partnership agreement. Specifically, the trial court refused to enforce paragraphs 8 and 14 of the limited partnership

agreement, denying defendant its 25 percent share of the profit.

The trial court ordered that the sums due each party should be offset against the other, with a net judgment entered in favor of ERADCO in the amount of $67,486.01, that was to be a lien against the property of the Campus Park LP, and paid in five equal annual payments commencing September 18, 1986. The trial court found that ERADCO did not violate the Washington State securities act or the Consumer Protection Act.

The Court of Appeals reversed in part when it held that pursuant to RCW 25.10.440 upon the removal of ERADCO as general partner, the failure of the limited partners *unanimously* to elect a successor general partner resulted in the dissolution of the partnership. Further, the court reversed the $169,790 award to ERADCO for reimbursement of advanced expenses as not supported by the findings of the trial court. The court also held that ERADCO had violated the securities act, and thus remanded for an award of attorney fees attributable to proving those violations. Finally, the court remanded for a determination of whether ERADCO had violated the Consumer Protection Act. *Obert v. Environmental Research & Dev. Corp.*, 51 Wn. App. 83, 752 P.2d 924 (1988).

As to the present status of the limited partnership, plaintiffs represent in their petition for review:

> Since May, 1984 to the present, the Pace Corporation has managed the [Campus Park LP] property and acted in all respects as the [General Partner]. *No Motion for Stay of this authority has ever been proposed by ERADCO.* Indeed, Pace by its President, Robert Gerend, personally guaranteed a $260,000 loan from Puget Sound Bank to the partnership in reliance on the court's ruling and the vote of the limited partners that he was the legal [General Partner]. . . . The partnership is presently solvent and well managed.

ANALYSIS

The Campus Park LP Agreement (Agreement) provides:

14.2 Limited Partners shall only have the right to vote upon the following matters affecting the basic structure of the Partnership:

14.2.1 Removal of the General Partner for cause;

14.2.2 Election of a successor General Partner;

14.2.3 Termination and dissolution of the Partnership;

14.2.4 Amendment of the Partnership Agreement . . .

Additionally, paragraph 14.7 provides: "Matters upon which the Limited Partners may vote shall require a majority vote, as defined in paragraph 3.8 of this Agreement, to pass and become effective." Paragraph 3.8 defines a majority vote as 66 percent of the outstanding units.

According to the terms of this portion of the Agreement, then, on May 5, 1984, 74.4 percent of the limited partners effectively removed ERADCO for cause and voted Pace the successor general partner. Nonetheless, ERADCO argued at both the trial court and Court of Appeals that the unanimity requirement of paragraph 18 of the Agreement should control, resulting in the dissolution of the Campus Park LP:

18.1 The Partnership shall be terminated and dissolved upon the happening of any of the following events:

. . .

18.1.2 The expulsion of the General Partner unless, prior to the effective date upon which the General Partner is to be expelled, a successor General Partner is elected by a *unanimous* vote of the holders of the outstanding units, which successor elects to continue the business of the Partnership . . .

(Italics ours.) If this paragraph were to control, upon the removal of ERADCO as general partner, the partnership would have been dissolved by its failure unanimously to elect a successor general partner. Both the trial court and Court of Appeals correctly held that the unanimity requirement in paragraph 18 and the majority vote (66 percent) requirement of paragraph 14 conflicted, creating an ambiguous, contractual provision to be construed in favor of the plaintiffs, the nondrafting party. Consequently,

the 66 percent provision of paragraph 14 controls, effecting Pace the successor general partner. This contractual interpretation question was not an issue raised in the petitions for review.

What is at issue, however, is the effect of Washington's uniform limited partnership act, codified at RCW 25.10, on the contractual provisions of the Agreement pertaining to the election of a successor general partner. According to the Court of Appeals, under the nonjudicial dissolution statute, the Campus Park LP was dissolved upon the limited partners' failure *unanimously* to elect a successor general partner:

> A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:
>
> . . .
>
> (4) An event of withdrawal of a general partner unless at the time there is at least one other general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved and is not required to be wound up by reason of any event of withdrawal if, within ninety days after the withdrawal, *all* partners agree in writing to continue the business of the limited partnership and to the appointment of one or more additional general partners if necessary or desired . . .

(Italics ours.) RCW 25.10.440. The Court of Appeals held that this provision nullified the 66 percent contractual provision of paragraph 14 of the Agreement and effected a dissolution of the limited partnership. In so doing, the court failed to consider the effect of RCW 25.10.670(1) on this particular limited partnership.

Upon the adoption of the uniform limited partnership act in 1981, the Legislature provided that, with certain exceptions, the act was inapplicable to any valid, conflicting contractual provision entered into prior to the adoption of the act:

> (1) Except as provided in subsections (1) and (2) of this section, the provisions of this title shall apply to all

existing limited partnerships formed after June 6, 1945, under any prior statute of this state providing for the formation of limited partnerships, *except to the extent provisions of this title are inconsistent with provisions of the certificate or partnership agreement of such existing limited partnerships, which partnership provisions were applicable to such limited partnerships as of January 1, 1982, and which partnership provisions would have been valid under any such applicable prior statutes.* Insofar as the provisions of this title are substantially the same as statutory provisions repealed by this title and relate to the same subject matter, such provisions shall be construed as restatements and continuations, and not as new enactments. Neither the enactment of this title nor the amendment of this title nor the repeal of the prior title shall take away or impair any liability or cause of action existing or accrued by or against any limited partnership or its partners.

(Italics ours.) RCW 25.10.670(1). The Campus Park LP Agreement was filed April 24, 1979. Consequently, it must be determined whether paragraph 14 of the Agreement would have been valid under the applicable prior statutes. If so, the effect of RCW 25.10.670(1) is to prevent the retroactive application of RCW 25.10.440 to any terms in the 1979 Agreement that conflict with RCW 25.10.440. It follows then, that if paragraph 14 is valid under the applicable prior statutes, the Court of Appeals erred when it ordered the dissolution of the Campus Park LP.

■ As of April 24, 1979, the applicable limited partnership statutes were set forth at RCW 25.08 (repealed by Laws of 1981, ch. 51, § 72). These statutes contain no provisions relating to *limited partners'* voting rights, or their ability to elect a successor general partner. As a result, in the absence of a statute to the contrary, the limited partnership agreement will control:

One of the salient characteristics of partnership law is the extent to which partners may write their own ticket. Relations among them are governed by common law and statute, but almost invariably can be overridden by the parties themselves. As one court has long put it, the agreement is the law of the partnership.

A. Bromberg, *Partnership* § 5, at 43 (1968). Thus, the 66 percent provision was permissible under the limited partnership statutes in 1979, and Pace successfully replaced ERADCO as general partner when 74.4 percent of the limited partners voted Pace successor general partner. Accordingly, no dissolution of the limited partnership occurred.

ERADCO opposes this conclusion on two grounds. First, it argues that this court should not entertain a legal argument not raised at the trial court or Court of Appeals. In point of fact, *this court* called for supplemental briefs on the applicability of RCW 25.10.670(1) pursuant to RAP 12.1(b). That rule clearly allows a new issue to be raised by the appellate court:

> If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

RAP 12.1(b). Furthermore, the rule precluding consideration of issues not previously raised operates only at the discretion of this court. "The appellate court *may* refuse to review any claim of error which was not raised in the trial court." (Italics ours.) RAP 2.5(a). To bolster support for their argument that this court should not consider the otherwise determinative statute in this case, defendants cite two cases in which this court, in reliance upon RAP 2.5(a), declined to entertain new issues raised by *a party*. These cases do not involve instances where *this court* has called for supplemental briefing, and thus provide no support for defendants' position. Were the defendants' argument to be accepted, RAP 12.1(b) would be rendered meaningless.

Second, defendants argue that even under the preexisting limited partnership statutes, paragraph 14 of the Agreement would be invalid, as well. For support, they cite former RCW 25.08.090, a statute defining the powers of a *general partner*:

A *general partner* shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:
(1) Do any act in contravention of the certificate;

. . .
(7) Continue the business with partnership property on the death, retirement or insanity of a general partner, unless the right so to do is given in the certificate.

(Italics ours.) (Repealed by Laws of 1981, ch. 51, § 72.)

Defendants' argument fails in three respects. First, this statute restricted the power of a *general partner.* In the case at hand, the *limited partners,* in compliance with the Agreement, elected the successor general partner. Second, the statute cited restricted the continuation of business only upon the "death, retirement, or insanity" of a general partner, none of which occurred in the case at hand. Finally, even should removal for cause be equated with "death, retirement, or insanity", the remaining statutory clause provided for continuation of the business if the right is contained in the Agreement. The Agreement in the case at hand specifically allowed a majority (defined as 66 percent) of the limited partners to remove the general partner for cause and elect a successor general partner. As a result, this statute did not restrict the limited partners' action in the case at hand.

Accordingly, RCW 25.10.670(1) prohibits the retroactive application of the 1981 limited partnership act to any conflicting provision in a previously existing, valid limited partnership agreement. Thus, the Court of Appeals erred in ordering the dissolution of the limited partnership.

Nevertheless, the plaintiffs request this court to decide the issue in their favor, based not upon this reasoning, but rather upon the application of the existing statute (RCW 25.10.440). Essentially, they wish to know, were it not for the existence of RCW 25.10.670(1), would the Court of

Appeals have erred in ordering the dissolution of the limited partnership? We decline to address this hypothetical question.

To decide this case upon neither the facts presented nor the applicable law would constitute an advisory opinion. This court has repeatedly refused to issue such opinions, and we maintain that position today. "We do not give advisory opinions. . . . Our decision must be limited to the facts of the instant case." *Hutchinson v. Port of Benton,* 62 Wn.2d 451, 456, 383 P.2d 500 (1963). *Accord, Grill v. Meydenbauer Bay Yacht Club,* 57 Wn.2d 800, 805, 359 P.2d 1040 (1961).

Regardless of the dissolution issue, ERADCO contends the trial court abused its discretion when it denied ERADCO's prayer for specific performance of the profits clause in the Agreement, even though ERADCO breached its fiduciary duty to the limited partners.

Paragraph 8.5 of the Agreement provided for ERADCO to receive a subordinated 25 percent interest in the net profits of the Campus Park LP:

> The General Partner shall receive a subordinated interest of 25% of the net cash proceeds from sale or refinancing of the property, provided, that said fee shall be postponed until all the partners have received cash distributions equal to 100% of their original investment.

This provision was to hold true even in an instance where the general partner was removed for cause:

> In the event of, and upon the removal of the General Partner as provided in subparagraph 14.2.1 of this paragraph [Removal of the General Partner for cause], the General Partner shall receive in cash prior to said removal full payment of the subordinated interest as defined in paragraph 8.5 hereof . . . The subordinated interest shall be calculated as set forth in paragraph 8.5 above, with the exception that the sales price shall be determined by an independent M.A.I. appraisal, or a bona fide offer to purchase, whichever figure may be the greater, and shall further be treated as if the sale were a cash sale, and the General Partner shall receive his fee forthwith. . . .

Essentially, this provision converts ERADCO's subordinated profit, as provided for in paragraph 8.5, into a preferential profit on the occasion of a breach by ERADCO, and then, subsequently rewards ERADCO upon its removal for cause. While this is not immediately at issue, we note that the propriety of this paragraph is highly questionable, given the nature of the fiduciary relationship. *See* Note, *Partnership—Disclosure, Fairness and Substantive Administrative Regulation of a General Partner's Fiduciary Duty in a Real Estate Limited Partnership,* 50 Wash. L. Rev. 977 (1975). According to ERADCO's own calculations, this 25 percent subordinated interest is valued at approximately $634,000. This figure is based upon the trial court's finding that the value of the property was $7 million on the date ERADCO was removed as the general partner.

Upon finding that ERADCO had breached its fiduciary duty to the limited partners, the trial court refused to invoke its equitable power to order specific performance of the Agreement and denied ERADCO its contractual 25 percent interest in the profits:

> Paragraph 14 and paragraph 8 of the Limited Partnership Agreement, specifically as they relate to payment of twenty–five percent (25%) of the subordinated profits on sale of the property to the General Partner even when the General Partner is removed for cause, are against public policy as they operate as a disincentive to the limited partners to pursue an action for breach of fiduciary duty against the General Partner. A court acting in equity cannot reward a general partner who breaches its fiduciary duty and breaches the contract by awarding it a profit it has not earned.

We affirm the ruling of the trial court, and hold that it did not abuse its discretion in denying ERADCO's prayer for specific performance of the subordinated profit contractual provision.

■ Not unexpectedly, ERADCO argues to the contrary. First, ERADCO attempts to minimize the severity of the fiduciary breaches it committed by focusing on the lack of

actual damage done to the limited partners. Second, ERADCO contends that since the nature of the fiduciary breaches it committed are unrelated to its contractual right to the 25 percent compensation under the Agreement, the trial court should have no discretion to deny ERADCO its profit. Nevertheless, we find ERADCO's analysis unpersuasive. In point of fact, such arguments attempt to equate a breach of a fiduciary duty to a mere breach of contract. Such is not the law, and a disservice to the law would be done were we to ignore the very real distinctions between the two:

> Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. *As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions* . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

(Italics ours.) *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545 (1928) (quoting *Wendt v. Fischer,* 243 N.Y. 439, 444, 154 N.E. 303 (1926)).

In *Bassan v. Investment Exch. Corp.,* 83 Wn.2d 922, 524 P.2d 233 (1974), this court recognized the nature of the general partner's fiduciary obligation to the limited partners in a limited partnership context. The limited partnership in that case was formed for the purpose of speculative real estate investment, and was strikingly similar to the limited partnership in the case at hand. There, we held:

> The benefit of [the fiduciary] standard is nowhere more apparent than in a limited partnership of this nature. The articles give the general partner the authority to conduct "any and all of the business of the Partnership . . ." Once the limited partner has joined the partnership he has no effective voice in the decision-making process. *He must, then, be able to rely on the highest standard of conduct from the general partner.* Any deviation from this must be clearly stated in terms

that would give the limited partner the option of deciding whether or not, in the first instance, to join the partnership.

*The duty of loyalty resulting from a partner's fiduciary position is such that the severity of a partner's breach will not be questioned. The question is only whether there has been any breach at all.*

(Italics ours.) *Bassan,* 83 Wn.2d at 927–28. In another instance, it was succinctly stated: "Not only does harm not define the scope of fiduciary duty, it also is not determinative of damages." *Cogan v. Kidder, Mathews & Segner, Inc.,* 97 Wn.2d 658, 666, 648 P.2d 875 (1982). We reaffirm our commitment to this rule in declining to weigh the severity of ERADCO's breach.

ERADCO incorrectly argues that *Cogan* stands for the proposition that a breaching fiduciary forfeits only those profits related to the breach. On its face, this argument boldly ignores the above quoted language from *Cogan.* It further ignores the trial court's power of discretion regarding the use of specific performance. Finally, it fails to recognize that all of the profits arising out of the fiduciary relationship with the plaintiff in *Cogan* were denied. In that case, a real estate broker earned a secret commission by representing two parties in a transaction. The court disallowed all of the profit the fiduciary gained from the plaintiff, the party to whom the fiduciary breached its obligation. Nonetheless, the broker was allowed to retain the other principal's commission, an individual not a party to the action. In the case at hand, ERADCO's claim to 25 percent of the profits arises out of the agreement with the parties to whom it owed, and against whom it breached, a fiduciary duty.

This court has held that a denial of specific performance, in an instance of a fiduciary's breach, is in the sound discretion of the court:

The Restatement (Second) of Agency § 469 (1958) provides: "An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty". In *Williams v. Queen Fisheries, Inc.,* 2

Wn. App. 691, 469 P.2d 583 (1970), the Court of Appeals interpreted section 469 as flexible and held the denial of compensation "generally rests with the discretion of the court". *Williams,* at 698. We adopt this interpretation. *Cogan,* 97 Wn.2d at 667.

Therefore, once it determined a fiduciary breach had occurred, it is apparent the trial court did not err when it refused to consider the extent of the breaches, or the extent of the damage suffered by the plaintiffs as a result of those breaches. As reflected, *supra,* the court credited ERADCO the amount of its capital contribution plus interest.

Granting it breached its fiduciary obligation, ERADCO argues that the 74.4 percent of the limited partners who voted for ERADCO's removal and Pace's replacement as general partner breached their fiduciary duty by failing to hold a meeting and failing to notify ERADCO and the remaining limited partners of the proposed action. ERAD-CO's sole basis for this claim is a sentence in paragraph 14.6 of the agreement that provides: "The laws of the State of Washington pertaining to corporate proxies shall govern all Partnership proxies." ERADCO then cites a section of the Washington business corporation act to support its position:

> Any action required by this title to be taken at a meeting of the shareholders of a corporation, or any action which may be taken at a meeting of the share-holders, may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by all of the shareholders entitled to vote with respect to the subject matter thereof.

RCW 23A.08.265. The Court of Appeals correctly held that the language of the Agreement, and the inapplicability of this statute, defeated ERADCO's claim.

As previously quoted, the Agreement provides:

> 14.2 Limited Partners shall only have the right to vote upon the following matters affecting the basic structure of the Partnership:
> 14.2.1 Removal of the General Partner for cause;
> 14.2.2 Election of a successor General Partner . . .

Additionally, the Agreement provides that a majority vote, defined as 66 percent, shall effect passage of the action. Paragraph 14.6 provides: "Each unit holder entitled to vote may do so either in person *or by written proxy.*" (Italics ours.)

There is absolutely nothing in the Agreement, however, that requires a meeting be held when a vote is taken by the limited partners. In fact, the language of paragraph 14.6 suggests otherwise when it allows a *written* proxy. Absent a required meeting, RCW 23A.08.265 is inapplicable. Accordingly, we affirm the Court of Appeals on this issue.

■ Finally, ERADCO argues that the Court of Appeals erred when it "allowed" the limited partners to continue to act in reliance on the trial court decision pending receipt of the Court of Appeals mandate. As related, *supra,* the trial court held that the limited partnership properly replaced ERADCO with Pace as the successor general partner. Following the Court of Appeals decision that the limited partnership should be dissolved, the plaintiffs moved for an order of stay and authority of Pace to act as general partner pending review. From the plaintiffs' perspective, such an action was thoroughly unnecessary. For in fact, until the Court of Appeals issues its mandate pursuant to RAP 12.5, a decision of the Court of Appeals does not take effect. RAP 12.2. Furthermore, in the event a petition for review is granted, no authority exists for the Court of Appeals to enter its mandate. RAP 12.5. Thus, in this case, it was appropriate for the parties to continue to rely upon the trial court's ruling.

ERADCO argues that such a result is unfair in that a party who loses at the Court of Appeals could attempt to enforce its judgment from the trial court level while this court ponders the petition for review. ERADCO's argument completely ignores the availability of supersedeas by bond as provided for in RAP 8.1 and, accordingly, its argument is without merit. Furthermore, despite ERADCO's characterization, the Court of Appeals did not "allow" Pace to continue acting as general partner. Rather, the ruling of the

trial court remained valid until the Court of Appeals issued its mandate.

Accordingly, we reverse the Court of Appeals holding that the Campus Park LP was dissolved. We affirm the trial court's denial of specific performance of the subordinated profits clause. We affirm the Court of Appeals holding that the limited partners did not breach their fiduciary duties when they removed and replaced ERADCO. Finally, we remand to the trial court for consideration of those issues ruled upon by the Court of Appeals, but not raised in the petitions for review.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.

Reconsideration denied September 27, 1989.