[Nos. 26587-3-I; 26687-0-I.   Division One.   April 13, 1992.]

GERALD L. HANSON, *Appellant*, v. THE CITY
OF SNOHOMISH, ET AL, *Respondents.*

442

*David Allen, Richard Hansen, Todd Maybrown,* and *Allen & Hansen P.S.,* for appellant.

*Stephen G. Skinner, Robert L. Christie,* and *Waitt, Johnson & Martens,* for respondents.

GROSSE, C.J. — Gerald Hanson appeals the summary judgment dismissal of his action against the City of Snohomish and Police Chief Patrick Murphy (hereinafter collectively referred to as the City) for malicious prosecution, false arrest and imprisonment, negligent investigation, and violation of his civil rights. Hanson maintains that the trial

court erroneously applied the doctrine of collateral estoppel in dismissing his action. Hanson also sued for defamation based on a press release issued by the City of Snohomish Police Department. The trial court denied the City's motion for summary judgment on the defamation claim and the City requests discretionary review of that order.

This case arises from the 1985 arrest and conviction of Gerald Hanson for first degree assault in the shooting of a 7-Eleven store clerk in Snohomish, Washington. The critical evidence against Hanson was the victim's identification of Hanson as the man who shot her. The victim identified Hanson as her assailant on three separate occasions: (1) when she was presented a composite drawing prepared by police several hours after the shooting; (2) when shown a photo montage the next day; and (3) at a videotape lineup shown to the victim 2 days after the shooting.

Hanson sought to suppress the results of these procedures in a pretrial motion, arguing they were improperly suggestive. The motion was denied and the identifications were presented to the jury which subsequently convicted him of the charge.

Hanson appealed his conviction to this court. Among his assignments of error, he alleged the trial court erred in denying his motion to suppress the identifications. The Court of Appeals reversed his conviction and ordered a new trial. However, this court held that the challenged identification procedures were admissible, basing its reversal on trial court error in allowing the prosecutor to cross-examine Hanson on a fictional story he had written. *State v. Hanson*, 46 Wn. App. 656, 731 P.2d 1140, *review denied*, 108 Wn.2d 1003 (1987). After his conviction was reversed by this court, Hanson was retried and acquitted. He spent a total of 19 months incarcerated.

During the pendency of his criminal appeal, Hanson brought this civil action against the City for the investigation and identification procedures that resulted in his arrest. He alleged: (1) malicious prosecution; (2) false arrest

and imprisonment; (3) negligent investigation;[1] (4) defamation; and (5) violation of his civil rights. Claims 1, 2, 3, and 5 are based on the allegedly infirm identification procedures. The defamation claim is based on statements issued by the City in a press release on November 14, 1986, following Hanson's conviction and prior to his second trial.

In its motion for dismissal on summary judgment, the City argued that collateral estoppel precluded the relitigation of the propriety of its conduct in the identification procedures because that issue had been fully litigated and resolved against Hanson by the trial court and the Court of Appeals. The City also argued that the defamation claim should be dismissed for want of evidence, and because law enforcement officers enjoy a qualified privilege when releasing information to the public or news media concerning official activities. The trial court dismissed Hanson's first, second, third, and fifth causes of action on collateral estoppel grounds.

Application of the doctrine of collateral estoppel requires: (1) identity between the issue decided in the prior adjudication and the one presented in the action in question; (2) a final judgment on the merits; (3) that the party against whom the plea is asserted be a party or in privity with a party to the prior adjudication; and (4) that the application of the doctrine not work an injustice on the party against whom it is asserted. *See Shoemaker v. Bremerton*, 109 Wn.2d 504, 507-08, 745 P.2d 858 (1987); *State v. Cleveland*, 58 Wn. App. 634, 639, 794 P.2d 546, *review denied*, 115

---

[1]This court has expressed reluctance to recognize a cause of action for negligent investigation. *See Dever v. Fowler*, 63 Wn. App. 35, 44-45, 816 P.2d 1237, 824 P.2d 1237 (1991). We question that reluctance in view of the recent case of *Taggart v. State*, 118 Wn.2d 195, 214-15, 822 P.2d 243 (1992), in which the Washington Supreme Court, emphasizing that the exception applies only to basic policy decisions, held that the discretionary immunity exception does not shield parole officers from claims alleging negligent supervision. For a general discussion of the narrow doctrinal scope of the discretionary immunity exception in Washington, *see* Comment, *Washington's Discretionary Immunity Doctrine and Negligent Early Release Decisions: Parole and Work Release*, 65 Wash. L. Rev. 619, 624-629 (1990).

Wn.2d 1029 (1990), *cert. denied,* ___ U.S. ___, 113 L. Ed. 2d 468, 111 S. Ct. 1415 (1991). Because the first prong of the test, requiring identity of issues, is not met here, the trial court erred in granting the motion for summary judgment as to these claims.

■ The party asserting the doctrine of collateral estoppel bears the burden of proving that the issues in both cases were identical. *Beagles v. Seattle-First Nat'l Bank,* 25 Wn. App. 925, 929, 610 P.2d 962 (1980). *See also State Farm Mut. Auto. Ins. Co. v. Amirpanahi,* 50 Wn. App. 869, 871, 751 P.2d 329, *review denied,* 111 Wn.2d 1012 (1988).

The City argues that the identical issue is presented in criminal and civil cases. Specifically, the City asserts in its brief, "The precise issue presented in both the underlying criminal case and this civil case is whether the City of Snohomish's identification procedures . . . were done improperly and in such a fashion as to violate Mr. Hanson's constitutional rights."

This characterization of the issues is at best imprecise. The propriety of the identification procedures arose in a pretrial motion to suppress. The motion to suppress, and review of the trial court's denial of that motion, required application of the test set forth in *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). That case articulates the proper standard for determining the admissibility of identifications against a defendant: Only " 'a very substantial likelihood of irreparable misidentification' " takes infirm identification procedures out of the province of the jury's consideration. *Manson,* 432 U.S. at 116. Thus the precise issue tried was whether the identification procedures were so infirm as to create a substantial likelihood of irreparable misidentification.

That issue is distinct from the issues that would be presented in a civil trial on Hanson's causes of action 1, 2, 3, and 5. In a civil trial for malicious prosecution, for example, a plaintiff must show the following by a preponderance of the evidence: (1) malicious institution or continuation of the proceeding by the defendant; (2) want of probable cause;

(3) malice; (4) termination on the merits in plaintiff's favor, or abandonment of the proceedings; and (5) injury or damage attributable to the prosecution. *Bender v. Seattle*, 99 Wn.2d 582, 593, 664 P.2d 492 (1983).

■■ Just as the presence or absence of probable cause is critical in an action for malicious prosecution, *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942), it is also critical in a cause of action for false arrest, *see Daniel v. State*, 36 Wn. App. 59, 671 P.2d 802 (1983), and false imprisonment, *Heckart v. Yakima*, 42 Wn. App. 38, 708 P.2d 407, *review denied*, 105 Wn.2d 1003 (1985). The issue would also arise in an action for negligent investigation, and civil rights violations.[2] Moreover, the determination of probable cause does not depend on an earlier assessment made by the prosecutor; it is an objective determination properly left to the jury. *Bender*, 99 Wn.2d at 597.

The City has not met its burden of showing the requisite identity of issues decided in a prior adjudication. At most, it asserts that the issue of probable cause "is necessarily intertwined with the trial court's determination that the evidence of the identification procedures was admissible." Even assuming, arguendo, that this is correct, it is an insufficient basis for invoking the doctrine of collateral estoppel, which requires identity of issues necessarily decided in a prior adjudication. *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 431 P.2d 961 (1967).

Washington courts strictly construe the requirement that collateral estoppel applies only to issues "actually and necessarily litigated" in the prior action. *Henderson*, 72 Wn.2d at 118. It is not properly applied to issues that were peripheral to the issues decided in a previous adjudication, *In re Richland Hyatt House, Inc.*, 18 Wn. App. 426, 568 P.2d 825 (1977), *review denied*, 89 Wn.2d 1019 (1978), or to facts which may have been in controversy in the first action and are proven, but which are collateral to the claim asserted.

---

[2] A cause of action under 42 U.S.C. § 1983 may be sustained on a showing that defendants acted with gross negligence or recklessness. *Peterson v. Littlejohn*, 56 Wn. App. 1, 781 P.2d 1329 (1989).

*Beagles*, 25 Wn. App. at 931 (citing *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 229, 588 P.2d 725 (1978)). Here, the issue in the criminal action was Hanson's guilt or innocence. The admissibility of the identification evidence and the issue of the existence of probable cause to arrest are both collateral to that central issue.

The City argues that the trial court erred in denying summary judgment dismissal of Hanson's claim for defamation, while Hanson maintains he introduced sufficient evidence at trial to overcome the qualified privilege afforded police officers releasing information to the press or public.[3]

■■ The party moving for summary judgment bears the burden of demonstrating that there is no dispute as to a material fact; all reasonable inferences must be resolved against the moving party, and the trial court must consider the evidence and reasonable inferences in a light most favorable to the nonmoving party. CR 56(c). *Simons v. Tri-State Constr. Co.*, 33 Wn. App. 315, 655 P.2d 703 (1982), *review denied*, 99 Wn.2d 1001 (1983). For purposes of summary judgment, we are required, as was the trial court, to review the material submitted for and against the motion in the light most favorable to the party against whom the motion is made, and decide whether a material question of fact is presented. *United Pac. Ins. Co. v. Boyd*, 34 Wn. App. 372, 661 P.2d 987 (1983).

■ Law enforcement officers enjoy a qualified privilege when releasing information to the public or news media concerning official activities. *Bender v. Seattle*, 99 Wn.2d at 601. A person abuses the privilege by making a statement knowing it to be false or with reckless disregard as to its truth. *Bender*, 99 Wn.2d at 601-02. The rule is designed to preserve the important functions of informing and educating the public about law enforcement practices. *Bender*, 99

---

[3]Generally, a motion denying summary judgment is not appealable. *Zimny v. Lovric*, 59 Wn. App. 737, 739, 801 P.2d 259 (1990) (citing *Roth v. Bell*, 24 Wn. App. 92, 600 P.2d 602 (1979)), *review denied*, 116 Wn.2d 1013 (1991). *See also* RAP 2.3(b). However for reasons of judicial economy, we decide the issue here so that all the claims may be tried together on remand.

Wn.2d at 601. The Washington Supreme Court has specified that "[t]he right to inform the public, however, does not include a license to make gratuitous statements concerning the facts of a case or disparaging the character of other parties to an action." *Bender*, 99 Wn.2d at 601 (citing *Gold Seal Chinchillas, Inc. v. State*, 69 Wn.2d 828, 835, 420 P.2d 698 (1966)).

▪ To defeat a motion for summary judgment based upon a qualified privilege, the party prosecuting an action for libel and slander must present specific facts creating a genuine issue regarding "whether the defendant's statements were made after a fair and impartial investigation or upon reasonable grounds for belief in their truth." *Turngren v. King Cy.*, 104 Wn.2d 293, 310, 705 P.2d 258 (1985).

Listed below are the statements Hanson alleges are false, misleading, or irrelevant that were contained in the press release. While the statements viewed individually might appear relatively benign, taken together they could be construed to create a significant misimpression regarding the quantum of evidence tending to show that Hanson was the assailant in the crime.

1. Police found breast implants in Hanson's bed. (Hanson sold prosthetic devices. The relevance of implants being found in his bed, or anywhere else for that matter, is opaque at best. Even Police Chief Murphy, who signed the press release, was unable to suggest how this might be relevant.)

2. Hanson refused to take a polygraph test. (Hanson denies he refused to take such a test.)

3. Hanson used a BB or pellet pistol for target practice. (A rifle and shotgun, not a pistol as was used in the commission of the crime, were found in Hanson's home.)

4. A round of .22-caliber ammunition was found in Hanson's home. (Hanson alleges the information is misleading because it implies the same ammunition was used in the commission of the crime.)

5. A Snohomish police officer saw a vehicle similar to Hanson's in the vicinity of the shooting. (The vehicle in the

police report was white and blue, while Hanson's car was all blue.)

6. The assailant had short blond hair. (Police Chief Murphy admits he knew Hanson's hair was light brown.)

7. The victim identified her assailant as driving a blue Ford. (Police Chief Murphy could not provide a source for this statement.)

8. Hanson's first wife died of diabetes. (Again, the relevance of this fact to the crime for which Hanson was charged is questionable.)

Police Chief Murphy concedes in his deposition that he read the press release and signed it. At the time of signing, easily discoverable discrepancies existed in facts alleged in the press release and the police reports made the night of the crime for which Hanson was charged, and in the reports made of items found in Hanson's home (see list above). The contested issues of fact with respect to allegations in the press release, considered in conjunction with a careful reading of Police Chief Murphy's deposition, create an issue of fact as to whether the statements were made after a fair and impartial investigation or upon reasonable grounds for belief in their truth. Hanson has met his burden of adducing sufficient evidence to defeat the motion for summary judgment on the defamation claim.

The trial court's dismissal of Hanson's claims for malicious prosecution, false arrest and imprisonment, negligent investigation, and violation of his civil rights is reversed. The trial court's denial of the City's motion for summary judgment on the defamation claim is affirmed.

PEKELIS and KENNEDY, JJ., concur.

Review granted at 119 Wn.2d 1013 (1992).