[No. 59269-1.   En Banc.   May 27, 1993.]

GERALD L. HANSON, *Respondent*, v. THE CITY
OF SNOHOMISH, ET AL, *Petitioners*.

*Johnson & Martens, P.S.,* by *Robert L. Christie* and *Stephen G. Skinner,* for petitioners.

*Allen & Hansen P.S., David Allen, Richard Hansen,* and *Todd Maybrown,* for respondent.

ANDERSEN, C.J. —

## FACTS OF CASE

This action for malicious prosecution, false arrest and imprisonment, and violation of civil rights is based on the prosecution of Respondent Gerald L. Hanson for assault in the first degree. The issue is whether a conviction, which is later reversed, establishes the existence of probable cause as a matter of law. We hold that it does and affirm the trial court.

Gerald L. Hanson was convicted in 1985 of assault in the first degree. The criminal proceeding was based on the shooting of a convenience store clerk in Snohomish, Washington. The victim ultimately identified Hanson as her assailant. Three procedures were used by the Snohomish police to assist her in making that identification. First, she was shown a composite drawing which she believed was based on her own description of her attacker. Second, she was shown a photographic montage. And, third, she was shown a videotape lineup. The three procedures, which resulted in the identification of Hanson as the assailant, were accomplished within 2 days of the assault.

Hanson moved to suppress the identification on the ground that the procedures used by investigating police officers were impermissibly suggestive. The motion was denied and the identification evidence, along with other evidence, was admitted at Hanson's criminal trial. A jury found him guilty as charged.

Hanson appealed his conviction arguing, in part, that the trial court erred in denying his motion to suppress the identification evidence. The Court of Appeals reversed the trial

court and remanded for a new trial because the admission into evidence at the trial of fiction written by Hanson was held to be irrelevant and prejudicial.[1] However, the Court of Appeals went on to hold that the identification evidence was properly admitted, agreeing with the trial court that the procedures used by the police were not so unreliable or suggestive as to give rise to a substantial likelihood of misidentification.[2] On remand for a new trial, Hanson was acquitted.

By the time his second trial was concluded, Hanson had spent approximately 18 months in jail.

While he was incarcerated, and while the criminal appeal was pending, Hanson filed the present action against the City of Snohomish and its police chief alleging: (1) malicious prosecution; (2) false arrest and imprisonment; (3) negligent investigation; (4) defamation; and (5) civil rights violations. The malicious prosecution, false arrest and imprisonment, civil rights violations and negligent investigation causes of action are based on Hanson's argument that the identification procedures used by the police were improperly suggestive.

The trial court in the civil action granted the City's motion for summary judgment of dismissal as to the malicious prosecution, false arrest and imprisonment, negligent investigation and civil rights claims.[3] The trial court reasoned that the doctrine of collateral estoppel barred Hanson from relitigating the issue of whether the identification procedures used by the police were improperly suggestive. The Court of Appeals reversed, holding the requirements for collateral estoppel were not met.[4]

---

[1]*State v. Hanson*, 46 Wn. App. 656, 664, 731 P.2d 1140, *review denied*, 108 Wn.2d 1003 (1987).

[2]*State v. Hanson*, 46 Wn. App. at 664-68.

[3]The trial court denied the City's motion for summary judgment of dismissal on the defamation claim and that denial was affirmed by the Court of Appeals. *Hanson v. Snohomish*, 65 Wn. App. 441, 828 P.2d 1133 (1992). Hanson subsequently abandoned his claim for negligent investigation.

[4]*Hanson v. Snohomish, supra.*

We granted review and, pursuant to RAP 12.1, asked the parties for additional briefing on the issue of whether Hanson's conviction, even though overturned, establishes probable cause as a matter of law. We hold that it does, reverse the Court of Appeals and reinstate the trial court's summary judgment of dismissal.

Two basic issues are here presented.

ISSUES

ISSUE ONE. Does a conviction which is subsequently reversed conclusively establish the existence of probable cause, absent a showing that the conviction was obtained by fraud, perjury or other corrupt means?

ISSUE TWO. Does the doctrine of collateral estoppel bar relitigation of the impropriety of identification procedures used by the police in initiating the criminal action against Gerald Hanson?

DECISION

ISSUE ONE.

CONCLUSION. The conviction of an accused conclusively establishes the existence of probable cause, thus defeating an action for malicious prosecution, unless the conviction was obtained by fraud, perjury or other corrupt means.

■■ This case was determined by summary judgment. We thus engage in the same inquiry as the trial court,[5] viewing the facts and all reasonable inferences therefrom in a light most favorable to the nonmoving party.[6] Questions of law are reviewed de novo.[7]

Neither the parties, the trial court, nor the Court of Appeals considered whether Mr. Hanson's conviction for assault in the first degree conclusively established probable cause as a matter of law.

---

[5]*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[6]*Scott v. Pacific West Mt. Resort*, 119 Wn.2d 484, 487, 834 P.2d 6 (1992).

[7]*Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

Although the general rule is that an issue or theory which is not presented to the trial court will not be considered on appeal, that rule "is not inexorable and has its limitations". *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 621, 465 P.2d 657 (1970).[8] One such limitation is set forth in RAP 12.1(b), which provides:

> If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

In order to properly decide this matter, we have applied this rule in the present case.[9]

■ We agree with the trial court's dismissal of Hanson's malicious prosecution, false arrest, false imprisonment, and civil rights claims. We affirm, however, on a different theory.[10]

■ Our analysis begins with the recognition that malicious prosecution actions are not favored in law.[11]

> The reasons assigned for this attitude on the part of the courts are that it is to the best interest of society that those who offend against the law shall be promptly punished; that any citizen who has good reason to believe that the law has been violated shall have the right to take proper steps to cause the arrest of the offender; and that in taking such steps the citizen who acts in good faith shall not be subjected to damages merely because the accused is not convicted; yet, withal, that no [person] shall be charged with a crime, exposed to the danger of a conviction, and subjected to the expense, vexation,

---

[8]*See also* RAP 2.5(a); *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990); *Crawford v. Wojnas*, 51 Wn. App. 781, 786, 754 P.2d 1302, *review denied*, 111 Wn.2d 1027 (1988).

[9]*See Obert v. Environmental Research & Dev. Corp.*, 112 Wn.2d 323, 333, 771 P.2d 340 (1989).

[10]*See LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (appellate court can sustain a trial court judgment on any theory established by the pleadings and supported by the proof, even if the trial court did not consider it), *cert. denied*, 493 U.S. 814 (1989).

[11]*Bender v. Seattle*, 99 Wn.2d 582, 602-03, 664 P.2d 492 (1983) (Dimmick, J., concurring in part, dissenting in part); *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 496, 125 P.2d 681 (1942).

and ignominy of a public trial merely for the gratification of another's malice or ill will.

*Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 496-97, 125 P.2d 681 (1942).[12]

Hence, as has often been pointed out, the action has been hedged about by limitations more stringent than those surrounding actions based on almost any other conduct causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with.

52 Am. Jur. 2d *Malicious Prosecution* § 5, at 188-89 (1970).[13]

■ In order to maintain an action for malicious prosecution in this state, a plaintiff must plead and prove the following elements: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.[14] Although all elements must be proved, malice and want of probable cause constitute the gist of a malicious prosecution action.[15]

If probable cause is established, the action fails, for probable cause is a complete defense to an action for malicious prosecution.[16]

A majority of courts holds that probable cause is established by the prior conviction of the malicious prosecution

---

[12]*See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 119, at 871 (5th ed. 1984).

[13]*See Prosser and Keeton on Torts* § 119, at 876.

[14]*Peasley*, 13 Wn.2d at 497.

[15]*Peasley*, 13 Wn.2d at 497.

[16]*Peasley*, 13 Wn.2d at 499; *Pace v. Brodie-National, Inc.*, 60 Wn.2d 654, 656, 374 P.2d 1000 (1962).

plaintiff, even where that conviction has been overturned.[17] This also is the Restatement view. The Restatement (Second) of Torts § 667(1) (1977) provides:

> The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.

The comment to this subsection explains that the rule applies

> both when the proceedings are abandoned after the conviction has been set aside by the appellate court and when after a conviction has been set aside, the accused is acquitted upon a second trial. Unless the conviction was obtained by fraud, perjury or other corrupt means, the opinion of the trier of fact expressed by its verdict under the rule that the guilt of the accused must be established beyond a reasonable doubt, is regarded as conclusive evidence that the person who initiated the proceedings had reasonable grounds for so doing.

Restatement (Second) of Torts § 667, comment b, at 437 (1977).

A conviction is strong evidence that there was enough of a case to persuade a jury of guilt beyond a reasonable doubt, and thus is evidence that there was, at the very least, probable cause to prosecute.[18] This majority view is consistent with the conclusion reached by this court in *Hall v. Dare*, 147 Wash. 264, 266 P. 162 (1928). In *Hall*, the sole issue was whether a conviction established the existence of probable cause if the conviction was shown to be void or to be the result of perjury. This court did not expressly adopt the majority and Restatement view; it did, however, direct dismissal of the malicious prosecution after determining that the conviction in that case was not void and was not obtained by fraud or perjury.[19]

There is a distinction between a finding of probable cause and a finding of guilt. The issue here is not whether Hanson

---

[17]Annot., *Conclusiveness, as Evidence of Probable Cause in Malicious Prosecution Action, of Conviction as Affected by the Fact That It Was Reversed or Set Aside*, 86 A.L.R.2d 1090, 1094 (1962); 52 Am. Jur. 2d *Malicious Prosecution* § 179, at 298-99 (1970).

[18]*Prosser and Keeton on Torts* § 119, at 882.

[19]*Hall v. Dare*, 147 Wash. 264, 268, 266 P. 162 (1928).

is guilty or innocent, it is whether the police and the City of Snohomish had probable cause to prosecute.[20] The fact that a jury found Hanson guilty beyond a reasonable doubt established the existence of probable cause.

■ We now expressly hold that a conviction, although later reversed, is conclusive evidence of probable cause, unless that conviction was obtained by fraud, perjury or other corrupt means, or, of course, unless the ground for reversal was absence of probable cause.

Subsection 2 of the Restatement section involved here states that the converse of the above rule is not the law, that is, that an acquittal is not evidence of lack of probable cause. This court has not followed this rule and *Peasley* held that a prima facie case of want of probable cause is established by proof of acquittal.[21] Whether we would continue to adhere to the rule as stated in *Peasley* or would adopt the majority view set forth in the Restatement (Second) of Torts § 667(2) (1977) is not before us in the present case and we do not reach that issue.

Here, there was a conviction. Our own precedent, and our view that the majority rule is correct, requires us to hold that a criminal conviction conclusively establishes probable cause for initiating a prosecution. Because probable cause is a complete defense to a malicious prosecution action, Hanson's claim for malicious prosecution was properly dismissed on summary judgment, unless the record on appeal demonstrates that conviction was obtained by fraud, perjury or other corrupt practices.

ISSUE TWO.

CONCLUSION. The doctrine of collateral estoppel bars relitigation of the issue regarding impropriety of the identifica-

---

[20]The dissent contends that a judicial determination that a victim's identification of her assailant is reliable does not, even absent any contradictory evidence, establish probable cause. Dissenting opinion, at 575-76. Not only is this position illogical, it is legally unsupportable. *See, e.g., State v. Moon*, 45 Wn. App. 692, 695, 726 P.2d 1263 (1986); 1 W. LaFave, *Search and Seizure* § 3.4(c) (2d ed. 1987).

[21]*Peasley*, 13 Wn.2d at 498.

tion procedures used by the police in initiating the criminal action against Gerald Hanson.

The gravamen of Hanson's malicious prosecution claim is that the conviction was obtained by the use of improper means on the part of the Snohomish police and fits within the exception to the rule that a conviction establishes probable cause. Here, the only allegations that could even possibly support a claim of fraud, perjury or corrupt practices are those relating to the identification procedures. Whether those procedures were proper was decided in the City's favor in the criminal action.

Hanson alleges here, as he did in the criminal proceeding, that the investigating police officers used impermissibly suggestive methods for identifying the assailant of the assault victim. Specifically, Hanson alleges the police manipulated the composite drawing, the photographic montage and the videotape lineup. These arguments are the same arguments Hanson made to the trial court at the pretrial suppression hearing and to the Court of Appeals on appeal from his conviction. In each court, Hanson was unsuccessful. He may not now relitigate this issue in this related civil case.

The doctrine of collateral estoppel prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.[22] The purpose of the doctrine is to promote the policy of ending disputes,[23] to promote judicial economy and to prevent harassment of and inconvenience to litigants.[24] The doctrine may be applied in a civil action in which a party seeks to retry issues resolved against a defendant in a previous criminal case,[25] as well as in a civil rights action in which issues raised are the same as

---

[22]*Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985); *Beagles v. Seattle-First Nat'l Bank*, 25 Wn. App. 925, 929, 610 P.2d 962 (1980).

[23]*Beagles*, 25 Wn. App. at 929.

[24]*Malland*, 103 Wn.2d at 489.

[25]*Medrano v. Schwendeman*, 66 Wn. App. 607, 612, 836 P.2d 833 (1992); *Franklin v. Klundt*, 50 Wn. App. 10, 13, 746 P.2d 1228 (1987).

those determined in a criminal case.[26] The requirements which must be met when applying the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice.[27]

In the present case, it is clear that Gerald Hanson was a party to the criminal proceeding and that the criminal proceeding ended in a final judgment on the merits.

There also was identity of issues. In the criminal action, Hanson moved for suppression of the identification evidence claiming the identification was manipulated, impermissibly suggestive and improper on the part of the police. The same arguments and the same evidence are now presented in his civil action.

The trial court in the criminal action determined the identification evidence was reliable and thus admissible. On appeal, the Court of Appeals agreed. With respect to the composite drawing, the Court of Appeals held:

> Under the unusual circumstances of the present case, the preparation and use of the composite was not so suggestive as to require us to remove the identification from the jury's consideration. Often, a single suspect identification is suggestive because the very act of showing the witness one suspect indicates that the police have focused their attention on that person. In contrast, the victim in this case believed that the composite was based entirely on her own description of the assailant; she was not influenced to accept the initial composite as an accurate representation of the suspect. Although in general, single suspect identifications are suggestive, the instant case reveals "little pressure on the witness to acquiesce in the suggestion that such a display entails."

*State v. Hanson*, 46 Wn. App. 656, 666, 731 P.2d 1140 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116, 53 L. Ed. 2d

---

[26]*Allen v. McCurry*, 449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980).

[27]*Malland*, 103 Wn.2d at 489; *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983).

140, 97 S. Ct. 2243 (1977)), *review denied*, 108 Wn.2d 1003 (1987).

The Court of Appeals also rejected Hanson's challenge to the photographic montage, determining that it was not impermissibly suggestive. The court explained:

> while the subjects in the photo montage varied in appearance, these variations did not suggest that Hanson was a more likely suspect than the others displayed. Finally, the victim testified that no one drew her attention to any of the photos and that she felt free not to pick any of the subjects displayed in the montage.

*State v. Hanson*, 46 Wn. App. at 666-67.

The Court of Appeals also went on to hold the videotape lineup "was not suggestive".[28]

The State petitioned for review of the Court of Appeals' reversal and remand. Hanson, however, did not request review of the court's decision. The challenges, the evidence and the arguments Hanson presents in the present civil case are identical to those presented to the trial court at the suppression hearing and to the Court of Appeals in *State v. Hanson, supra*. The issue was and is whether the Snohomish police impermissibly manipulated identification evidence. We thus find the element of identity of issues is met for purposes of collateral estoppel.

Furthermore, application of the doctrine of collateral estoppel would not work an injustice here as Hanson has had an opportunity to present his evidence and his arguments on the issue to the trial court and the Court of Appeals.

The effect of applying collateral estoppel, coupled with the rule on prior convictions, is that probable cause is established and the malicious prosecution action therefore fails.

As with an action for malicious prosecution, probable cause is a complete defense to an action for false arrest and imprisonment.[29] Since probable cause is established as a

---

[28]*State v. Hanson*, 46 Wn. App. 656, 667, 731 P.2d 1140, *review denied*, 108 Wn.2d 1003 (1987).

[29]*Bender v. Seattle*, 99 Wn.2d 582, 592, 664 P.2d 492 (1983).

matter of law in this case, the false arrest and imprisonment claims necessarily fail.

■ Additionally, the civil rights action, which is predicated on Hanson's claim that he has a constitutional right to be free from malicious prosecution, false arrest and false imprisonment, cannot stand once the underlying claims are dismissed.[30]

In sum, we hold that a conviction, although later reversed on appeal, conclusively establishes probable cause for the institution of the criminal proceeding, unless the conviction was obtained through fraud, perjury or other corrupt practice. In the present case, the only allegations that could even possibly support a claim of fraud, perjury or corrupt practices are those relating to the identification procedures. Whether those procedures were proper has already been decided in the City's favor. The doctrine of collateral estoppel precludes relitigating the issues in this case.

The Court of Appeals is reversed and the trial court's summary judgment of dismissal is reinstated.

BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and GUY, JJ., concur.

UTTER, J. (dissenting) — Today, the majority endorses a draconian new limitation on the law of malicious prosecution which unfairly cuts off relief for persons who may have been injured by unlawful law enforcement action. Essentially, the majority holds that police and prosecutorial authorities may illegally arrest an individual without probable cause, prosecute that individual, and then create a shield for their actions by obtaining a conviction, even if that conviction is itself illegal. Furthermore, the majority adopts this new rule even though its application to this case was never raised by the parties. For these reasons, I must respectfully dissent.

---

[30]*See, e.g., Peterson v. Littlejohn*, 56 Wn. App. 1, 13, 781 P.2d 1329 (1989).

The relevant facts of this case are relatively simple, so I will not add to the description provided by the majority.[31]

## I

The majority has adopted the rule that a conviction, even if reversed, is conclusive evidence of probable cause, unless that conviction was obtained by perjury, fraud, or other corrupt means. Under the circumstances of this case, the court should not have reached the issue of the effect of Hanson's previous, reversed conviction because it was not raised by any of the parties. See part II, *infra*. Even if the court reaches the question of the effect of the previous, reversed conviction, it should not adopt this particular rule. In its place, this court should apply the rule that a previous conviction, when reversed, is only prima facie evidence of probable cause, rather than conclusive evidence. Under this rule, plaintiffs would have the obligation to overcome that prima facie evidence with competent and convincing evidence of a lack of probable cause. For the sake of clarity, I will refer to the majority's rule as the "conclusiveness" rule and to my proposed alternative as the "prima facie" rule.

A careful examination of the conclusiveness rule reveals that it has been rejected by a number of jurisdictions, is analytically unsound, and has the potential to be a source of great injustice. While the conclusiveness rule may be the "majority" rule, a substantial number of jurisdictions have rejected it in favor of the prima facie rule. Alabama, Iowa, Louisiana, Minnesota, New Hampshire, New Jersey, New Mexico, and Pennsylvania have each adopted the prima facie rule in various forms. *See Johnston v. Byrd*, 279 Ala. 491, 494, 187 So. 2d 246, 249 (1966); *Miller v. Runkle*, 137 Iowa 155, 114 N.W. 611 (1908); *Paige v. Chariton*, 252 N.W.2d 433, 438 (Iowa 1977); *Jones v. Soileau*, 448 So. 2d 1268, 1271-72 (La. 1984); *Skeffington v. Eylward*, 97 Minn. 244, 246-47,

---

[31]More complete statements of the facts in this case may be found in the decision of the Court of Appeals in Hanson's criminal appeal, *State v. Hanson*, 46 Wn. App. 656, 731 P.2d 1140, *review denied*, 108 Wn.2d 1003 (1987), and in Judge Grosse's excellent opinion below in these proceedings, *Hanson v. Snohomish*, 65 Wn. App. 441, 828 P.2d 1133, *review granted*, 119 Wn.2d 1013 (1992).

105 N.W. 638, 638-39 (1906); *MacRae v. Brant*, 108 N.H. 177, 180-81, 230 A.2d 753, 755-56 (1967); *Lind v. Schmid*, 67 N.J. 255, 263-64, 337 A.2d 365, 369 (1975); *Vincioni v. Phelps Dodge Corp.*, 35 N.M. 81, 290 P. 319 (1930); *Miera v. Waltemeyer*, 97 N.M. 588, 591-92, 642 P.2d 191, 194-95, *cert. quashed*, 644 P.2d 1040 (1982); *Cap v. K-Mart Discount Stores, Inc.*, 357 Pa. Super. 9, 13, 515 A.2d 52, 54 (1986).[32] Furthermore, in some of the jurisdictions which have adopted the conclusiveness rule, this adoption has occurred only over vigorous dissent in favor of the prima facie alternative. *See, e.g., House v. Ane*, 56 Hawaii 383, 396-403, 538 P.2d 320, 328-32 (1975) (Lewis, J., dissenting); *Deaton v. Leath*, 279 S.C. 82, 85-87, 302 S.E.2d 335, 336-37 (1983) (Lewis, C.J., dissenting).

The majority's rationale for its rule is simple: "A conviction is *strong evidence* that there was enough of a case to persuade a jury of guilt beyond a reasonable doubt, and thus is evidence that there was, at the very least, probable cause to prosecute." (Italics mine.) Majority, at 559. This presumption of the evidentiary force of the jury's verdict is, however, grounded in the assumption that the criminal defendant had a full and fair trial and was convicted on substantial evidence. When the assumption is false, illogical and unjust results follow.

For example, convictions are occasionally overturned for failure of the sufficiency of the evidence. *See, e.g., Thompson v. Louisville*, 362 U.S. 199, 4 L. Ed. 2d 654, 80 S. Ct. 624, 80 A.L.R.2d 1355 (1960) (reversal of conviction for loitering); *State v. Meyer*, 37 Wn.2d 759, 226 P.2d 204 (1951) (conviction for rape set aside); *State v. Woods*, 63 Wn. App. 588, 821 P.2d 1235 (1991) (conviction for burglary set aside); *State v. McAllister*, 60 Wn. App. 654, 806 P.2d 772 (1991) (reversal of conviction for vehicular homicide). The essence of such a holding is that no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *See Jackson*

---

[32]Some of the cases cited, particularly *Skeffington*, *Runkle*, and *Vincioni*, are quite old. I have included these older cases not only because of their holdings, but also because they have become seminal precedents in the continuing debate over the legal issues in this case.

*v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Lord*, 117 Wn.2d 829, 881, 822 P.2d 177, *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 112, 113 S. Ct. 164 (1992). If no reasonable trier of fact could have found guilt in a particular case, what can be the evidentiary force of a conviction by a trier of fact which actually did return a verdict of guilty? It would merely be compounding the presumptive irrationality of the original verdict to then accord such a verdict conclusive evidentiary weight. "Surely, a conviction, set aside because there was a total lack of evidence to support it, is not to be regarded as *conclusive* of the issue of probable cause." *Deaton*, 302 S.E.2d at 337 (Lewis, C.J., dissenting).

The effect of the conclusiveness rule may be even more disturbing when the initial conviction is reversed for error of law, and the defendant is acquitted on retrial. Such a defendant would, of course, be barred by the conclusiveness rule from bringing a malicious prosecution action. However, if the original trial court had not made an error of law, the acquitted defendant's right to bring such an action would not have been extinguished, since he or she would have been acquitted at the original trial rather than at the second. The only reason the otherwise potentially valid legal right of action is eliminated is an error of law by a trial court. As the Supreme Court of New Jersey aptly observed:

> If the magistrate erred as a matter of law, should the plaintiff be deprived of his cause of action? If that trial court had acted correctly there would have been an acquittal. Then the plaintiff would have been able to maintain the malicious prosecution suit. The inequity of a rule which in that situation bars the cause of action is obvious.

*Lind v. Schmid*, 67 N.J. 255, 264, 337 A.2d 365, 369 (1975). This logic is particularly relevant to this case. The *only* obstacle to Hanson's malicious prosecution action is the error of the first criminal trial court in permitting the introduction of irrelevant and prejudicial evidence in Hanson's first trial. *State v. Hanson*, 46 Wn. App. at 658-64. Had the first trial been conducted properly, as was the second, Hanson would have been acquitted, and his right of action would still exist.

It is a bizarre rule which would deprive Hanson of his legal cause of action merely because of a legal error made by a trial judge.

Furthermore, the conclusiveness rule runs contrary to the " 'general rule [ ] that a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel' ". *Sutton v. Hirvonen*, 113 Wn.2d 1, 10, 775 P.2d 448 (1989) (quoting *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985)). While the conclusiveness rule is not precisely a rule of collateral estoppel, its effect is exactly the same. It is anomalous to hold that vacated verdicts may not be employed as collateral estoppel, while at the same time affording conclusive effect to a vacated or reversed verdict in barring malicious prosecution actions.

A prima facie rule avoids these logical difficulties while recognizing the potential evidentiary force of a conviction. On the one hand, the prima facie rule prevents the injustices described above that may result from the mechanical application of the conclusiveness rule. On the other, it allows defendants in malicious prosecution actions to take advantage of the plaintiff's previous conviction when that conviction actually is "strong evidence" of probable cause. In order for a malicious prosecution plaintiff to prevail over such evidence, he or she would have to prove there was in fact no probable cause for the original arrest or prosecution. Thus, the prima facie rule appropriately protects the interests of malicious prosecution defendants while still allowing plaintiffs their day in court to prove an absence of probable cause.

The majority cites this court's decision in *Hall v. Dare*, 147 Wash. 264, 266 P. 162 (1928), in support of the conclusiveness rule. *Hall* is not persuasive. As the majority recognizes, the *Hall* court did not discuss nor adopt the rule in question here. Majority, at 559. At most, the parties in *Hall* argued their case to this court as if the conclusiveness rule would apply. Such a decision does not bind this court to adopt the conclusiveness rule.

I am aware of the policy that malicious prosecution actions are not favored in the law. *See Peasley v. Puget Sound Tug &*

*Barge Co.,* 13 Wn.2d 485, 496, 125 P.2d 681 (1942). This policy is generally a wise one, in that it recognizes the central roles which police and prosecutors play in maintaining order in our society and the burdens imposed on each of us as citizens as part of the price for that order. *See* F. Harper, F. James & O. Gray, 1 *Torts* § 4.2, at 407-08 (2d ed. 1986).

One critical limitation we place on the activities of the police and prosecutorial authorities, however, is that of probable cause. As long as our officials act with probable cause, we will not force them to be "mulcted in damages", even if their judgment with regard to a particular individual is discovered to be mistaken. *See Pierson v. Ray,* 386 U.S. 547, 555, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967). If, however, these officials act without such justification, they may be liable for the damages which their actions inflict. *See Peasley,* 13 Wn.2d at 496 (court will uphold malicious prosecution actions when they meet imposed requirements); *Hryciuk v. Robinson,* 213 Or. 542, 560, 326 P.2d 424, 432 (1958) (policy of malicious prosecution is "protecting the individual from the damage caused by unjustifiable criminal prosecution") (quoting *Jaffe v. Stone,* 18 Cal. 2d 146, 160, 114 P.2d 335, 343, 135 A.L.R. 775 (1941)). The rule adopted by the majority undermines this policy by holding that the authorities may arrest and prosecute individuals *without probable cause,* as long as they can obtain a conviction against the person arrested, even when that conviction is itself infirm. This is not an example of carefully limiting malicious prosecution actions, it is a subversion of the very principles which underlie those actions.

Because I feel this result represents an unwarranted reduction in the protections afforded by the law of malicious prosecution, I dissent. If the court must reach this issue at all, it should adopt the prima facie rule and allow Hanson to go forward to trial.

## II

In addition to disagreeing with the majority on the merits of the conclusiveness rule, I also believe the manner in which the majority has reached the issue undermines proper

appellate procedure. As the majority recognizes, the application of the conclusiveness rule was not raised by the City of Snohomish either before the trial court, the Court of Appeals, or this court. Majority, at 556. It was only at this court's behest that the parties submitted supplemental briefing and argued the merits of the conclusiveness rule.

This approach flies in the face of the oft-stated rule that this court will not consider issues on appeal which were not raised below. RAP 2.5(a); *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 427, 841 P.2d 1244 (1992); *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992); *State v. Laviollette*, 118 Wn.2d 670, 679, 826 P.2d 684 (1992). Of course, this court has the inherent authority to consider such issues if necessary to decide a case, *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 469, 843 P.2d 1056 (1993), but the mere existence of such a discretionary authority is no justification for its exercise.[33]

The majority, for its part, gives no explanation for its decision, other than the cryptic statement that the rule is "necessary" to decide the case. If by "necessary" the majority means only that the new rule affects the outcome of the case, then virtually *all* issues raised on appeal should be considered by the court, since most such issues will affect the outcome of a case. Since it seems extremely unlikely that the majority seeks to foster such a result, the reason the rule is "necessary" to decide this case is simply that the majority wishes to apply it. This essentially ad hoc approach to the exercise of this court's discretionary authority to reach new issues is unwise, unfair to parties, and poorly structured to assist in the orderly development of the law. As a matter of fact, this court has typically only raised issues on its own initiative in a number of fairly limited circumstances, none of which apply here.

---

[33]The majority's citation to RAP 12.1(b) is inapposite for the same reason. Majority, at 557. This rule is not itself a substantive justification for this court to exercise its authority to raise issues sua sponte, but is instead merely a procedure by which the court may do so.

The court may raise jurisdictional issues sua sponte. RAP 2.5(a). The court may also raise issues of manifest error affecting constitutional rights. RAP 2.5(a). The conclusiveness rule put forward by the majority is neither a jurisdictional issue nor an issue of manifest error affecting a constitutional right.

Perhaps the chief reason for this court to raise an issue sua sponte is its obligation to decide cases in accordance with applicable law. In *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970), the court held it would "not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent." 77 Wn.2d at 623. *See also Obert v. Environmental Research & Dev. Corp.*, 112 Wn.2d 323, 333-35, 771 P.2d 340 (1989) (court raising applicability of statute sua sponte); *State v. Danforth*, 97 Wn.2d 255, 257, 643 P.2d 882 (1982) (same).

In this case, there is neither an applicable statute nor an established precedent to be applied. While *Hall v. Dare*, 147 Wash. 264, 266 P. 162 (1928) is suggestive of the rule at hand, it does not explicitly adopt the conclusiveness rule, presents no reasoning on its behalf, and has not been followed by any court in this jurisdiction. As such, it hardly qualifies as an "established precedent" which compels the consideration of the conclusiveness rule.[34]

Thus, the principal considerations for raising issues sua sponte do not exist in this case. Furthermore, an examination of public policies which might inform our decision to raise an issue sua sponte weigh heavily against raising the issue at this time.

Gerald Hanson has resorted to the judicial system for an impartial resolution of his claims of mistreatment at the hands of the police and prosecutorial authorities. The persons Hanson accuses, the City of Snohomish and the various police officers, have resisted his claims pursuant to the

---

[34]The temporal gap between *Hall*, decided in 1928, and the present also weighs heavily against treating the decision as an "established precedent".

traditional adversary procedures upon which our system of justice is based. At the initial stages of the proceedings, the dispute between the parties revolved around the application of collateral estoppel. The City's arguments were successful before the trial court, while Hanson prevailed before the Court of Appeals. Rather than address the existing dispute between the parties in the role of an impartial tribunal, the majority now seeks to inject this court into these proceedings by discovering and applying new legal theories which the City's representatives have failed to discern on their own. The only accurate manner in which to describe the court's role in this respect is as an advocate for the City and the police. The impropriety of such a role for this court should be obvious.[35]

Furthermore, raising the issue at this juncture deprives this court of the opportunity to receive a full discussion of the wisdom of the conclusiveness rule. One of the most significant reasons to avoid addressing new issues on appeal is that the development of the law is better served by the process of repeated discussion of issues at the various stages of the judicial process. As discussed in part I, *supra,* there are substantial reasons to prefer the prima facie rule to the conclusiveness rule, reasons which the majority has not even discussed.[36] If, however, this court were to refrain from adopting new rules of law at its own behest, and instead limit consideration of such rules to cases in which the parties have had a full opportunity to argue their positions, the law would be much better served.

This court's role as an impartial tribunal and the need for a more reflective and thorough consideration of critical devel-

---

[35]This observation would not apply to the application of a statute or an established precedent. It is the obligation of this court to apply existing law and to do so involves no impropriety. The case is entirely different when the court is assisting attorneys in developing new arguments based on novel legal theories.

[36]For example, the majority cites *no cases* which discuss or adopt the conclusiveness rule, despite the fact that the rule is allegedly the majority rule in the United States. Instead, the majority cites only two secondary sources, an annotation and a compendium.

opments in the law therefore speak strongly in favor of refusing to raise the applicability of the conclusiveness rule in this case. Correspondingly, the court should have saved the applicability of the rule for a more appropriate case and decided this case only with respect to the issues on which it reached this court.

## III

On the issue which was originally presented to this court on appeal, I would affirm the Court of Appeals. The lower court correctly concluded that the issues determined at Hanson's pretrial suppression hearing (the suggestiveness of the identification procedures to the *victim*) were necessarily distinct from the issue of probable cause (the information available to the *police and prosecutor* at the time the decision to arrest or prosecute is made).

Collateral estoppel is appropriate only when the following four factors are present: (1) the issue decided in the prior adjudication is identical with the issue now before the court, (2) there was a final judgment on the merits, (3) the party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication, and (4) the application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied. *See McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987); *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983). The guiding principle behind these requirements is the protection of the right of a party to fully and fairly litigate the issue in question. *See* Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 841 (1984-85); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22, 72 L. Ed. 2d 262, 102 S. Ct. 1883 (1982).

This appeal concerned the applicability of the identity prong of the test for collateral estoppel. Since all of the elements of collateral estoppel must be met, if the issues are not identical, collateral estoppel will be denied. *Seattle-First Nat'l Bank v. Cannon*, 26 Wn. App. 922, 925, 615 P.2d 1316 (1980). Most importantly for this case, mere *factual* identity

is insufficient to meet this requirement; estoppel will be denied unless the issues are also *legally* identical. *See Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974) (difference in legal standards of proof precluded collateral estoppel).

The question is simple: Were the issues decided in the pretrial suppression hearing factually and legally identical to those relevant to Hanson's claims for malicious prosecution, false arrest and false imprisonment, and civil rights violations? The issue decided at the pretrial suppression hearing was whether the identification procedures were constitutionally admissible under the due process standard enunciated by the United States Supreme Court in *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). The issue relevant to Hanson's civil claims is probable cause, which is the element common to each of those claims. *See Bender v. Seattle*, 99 Wn.2d 582, 592-93, 664 P.2d 492 (1983) (probable cause an element of both malicious prosecution and false arrest/false imprisonment). A careful juxtaposition of these issues reveals that while there are superficial factual similarities between the identification procedures and the existence of probable cause, there is an important difference in the legal inquiry which prevents the application of collateral estoppel.

It is necessary to be precise both about the nature of the legal issue in the pretrial suppression hearing and the inquiry into probable cause. At the pretrial suppression hearing, the criminal trial court was concerned with whether the identification procedures used by the police had impermissibly influenced the identifications provided by the victim and other witnesses. That is, it addressed the question of whether circumstances of the identification were such as to give "rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384. *Accord, State v. Vaughn*, 101 Wn.2d 604, 608, 682 P.2d 878 (1984); *State v. Hendrix*, 50 Wn. App. 510, 513, 749 P.2d 210, *review denied*, 110 Wn.2d 1029 (1988).

The legal inquiry under *Simmons* is thus not whether the police acted properly or improperly, but rather whether the

victim was actually influenced so as to taint the resulting identification. *See Manson v. Brathwaite*, 432 U.S. 98, 114-16, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977) (inquiry focusing solely on effect on person making identification). In fact, the United States Supreme Court has occasionally admonished police officers regarding their conduct of the identification procedures while simultaneously upholding the resulting identifications as constitutionally admissible. *See Simmons*, 390 U.S. at 386 n.6; *Manson*, 432 U.S. at 117. Therefore, a determination that the identification was not impermissibly suggestive in no way reflects upon whether the police conduct was "proper".

The focus of the *Simmons* inquiry on the person making the identification is reflected in the Court of Appeals decision upholding the identification procedures in this case. The court upheld the procedures because the victim "believed that the composite was based entirely on her own description", "was not influenced to accept the initial composite", and "felt free not to pick any of the subjects displayed in the montage." *State v. Hanson*, 46 Wn. App. 656, 666-67, 731 P.2d 1140, *review denied*, 108 Wn.2d 1003 (1987). Critically, at no point did the Court of Appeals provide a blanket validation of the police conduct since, as *Simmons* and *Manson* demonstrate, the identification issue is distinct from the question of whether the police acted "properly".

Probable cause, in direct contrast, focuses entirely on the propriety of police and prosecutorial conduct. The existence or nonexistence of probable cause is determined by an objective evaluation of what the police and/or the prosecutor knew at the time of arrest or prosecution.

> Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

*State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974); *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 509, 125 P.2d 681 (1942). *Accord*, 52 Am. Jur. 2d *Malicious Prose-*

*cution* § 51, at 218 (1970); *Hill v. Winn-Dixie Charlotte, Inc.*, 100 N.C. App. 518, 521, 397 S.E.2d 347, 349 (1990).

In sum, the test for the admissibility of identification evidence focuses on the effect on the person making an identification, while the test for probable cause focuses on an objective evaluation of the evidence available to the authorities at the time of arrest or prosecution. Since these are substantially different legal inquiries, the Court of Appeals correctly denied the application of collateral estoppel.

The difference between these two legal inquiries may have substantial consequences. It would be entirely possible for the police to perform identification procedures which would pass constitutional muster under *Simmons* but which would not provide probable cause for an arrest. For example, even if certain corrupt police officials are willfully attempting to manipulate an identification procedure, the procedure will still be constitutionally adequate if *the effect on the identifier* is not overly suggestive. Under such circumstances, however, the police would not have legitimate probable cause to arrest and prosecute because they would know that the identification had been manipulated. Thus, the mere fact that a given identification procedure has been upheld as constitutionally admissible is in no way determinative of the question as to whether the police had probable cause to arrest and prosecute.

The City's key error is its compression of the test for the admissibility for identification evidence and the test for probable cause into a single concept, the "propriety" of police conduct. "Propriety" is not a legal test in these circumstances for *anything*, much less for the admissibility of identification evidence or for probable cause. Since the legal tests for these two issues are so substantially different, the Court of Appeals was correct to deny collateral estoppel.

For the reasons described above, I respectfully dissent.

JOHNSON, J., concurs with UTTER, J.