William W. FOX, individually, and as trustee of Longmont Foot and Ankle Clinic, P.C. Pension Plan and of Longmont Foot and Ankle Clinic, P.C. Profit Sharing Plan, Plaintiff–Appellee,

v.

I–10, LTD., a Colorado limited partnership, Defendant–Appellant.

No. 95CA0303.

Colorado Court of Appeals, Div. II.

May 2, 1996.

As Modified on Denial of Rehearing June 20, 1996.

Certiorari Granted April 21, 1997.

Hutchinson, Black and Cook, L.L.C., C. Brad Peterson, David M. Packard, Boulder, for Plaintiff–Appellee.

Davis & Ceriani, P.C., Gary J. Ceriani, Bruce E. Rohde, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

In this dispute between a limited partnership and one of its limited partners, defendant, I–10, LTD., appeals from the summary judgment entered for plaintiff, William W. Fox, individually, and as trustee of Longmont Foot and Ankle Clinic, P.C. Pension Plan and of Longmont Foot and Ankle Clinic, P.C. Profit Sharing Plan. We reverse.

In November 1982, acting pursuant to the Colorado Limited Partnership Act of 1981, § 7–62–101, et seq., C.R.S. (1986 Repl.Vol. 3A) (CLPA), Fox and several other parties formed I–10, LTD., for the purpose of acquiring and developing for investment purposes certain land near Tucson, Arizona. The limited partnership had a single general partner and over 25 limited partners, including Fox. The limited partners made initial capital contributions in exchange for their respective interests in the partnership. By virtue of his initial capital contribution, Fox acquired approximately 20% interest in the partnership. These initial capital contributions were used, in part, to acquire the Arizona property, with the balance of the purchase price being financed by a long-term mortgage loan.

Article 4.09 of the limited partnership agreement empowered the general partner to assess additional pro-rata capital contributions from the limited partners any time the general partner determined that additional contributions were "necessary and desirable for any purpose." Article 4.09 also provided, however, that each limited partner's total additional capital contributions could not exceed 400% of each partner's initial capital contribution.

In addition, Article 7.02 required that all amendments to the partnership agreement, except for certain defined "routine amendments," be considered at a meeting of the limited partners and be approved by those limited partners who owned a majority of the limited partners' interests and by the general partner. It also provided that any such amendment could not deprive the general partner of any interest or compensation due it.

In the years following the formation of the partnership, the general partner called on the limited partners to make additional capital contributions. In anticipation of a March 1986 partners' meeting, the general partner sent the limited partners a letter and proxy statement informing them that a proposed land exchange with the State of Arizona had fallen through; that it would continue to explore other land exchanges; that, in the meantime, it would market the partnership land; and that it believed it was "crucial" that the partnership continue to develop the infrastructure of the land.

The general partner proposed that the partnership agreement be amended to reflect an expanded business purpose for future possible land exchanges and to raise the additional capital contribution cap set forth in Article 4.09 from 400% to 600% of the limited partners' initial capital contributions. The limited partners unanimously approved these amendments to the partnership agreement.

Later, the general partner again called on the limited partners to make additional capital contributions. As a result, Fox and all of the other limited partners eventually made total contributions in an amount almost equal to 600% of their initial capital contributions, the amount of the cap set forth in amended Article 4.09.

In November 1993, the general partner called another partnership meeting and requested that the limited partners again approve an amendment to Article 4.09, this time to raise the cap on additional capital contributions from 600% to 800% of the initial capital contributions. The notice from

the general partner indicated, among other things, that, "as a consequence of the severe downturn of the real estate market," the partnership had been forced to hold the land longer than anticipated; that the partnership was almost fully capitalized under the existing 600% cap; that there were insufficient partnership funds to make the remaining mortgage loan payments; that, if the mortgage payments were not made, the partnership would "lose" the land and its investment therein; and that the proposed additional assessment would allow the partnership to make the remaining mortgage payments and to pay for ongoing operating expenses. This new amendment to Article 4.09 was approved by the general partner and by all limited partners, except Fox, who objected to any increased contributions.

Thereafter, Fox commenced this action seeking both a declaration that he was not obligated to make any additional capital contributions under the most recent amendment to Article 4.09 and injunctive relief. The parties filed cross-motions for summary judgment and simultaneously submitted a stipulation of facts, attaching as exhibits copies of various documents, including the original limited partnership agreement, certain amendments thereto, and the notices for the two partnership meetings at which Article 4.09 was amended.

The court accepted Fox's argument, entered summary judgment for Fox, and ordered, among other things, that "the limited partnership agreement does not permit a majority of the limited partners to increase the capital contribution obligation of other limited partners." It held that, even if such amendment was permissible under the partnership agreement, it would be violative of the CLPA.

### I.

■ The limited partnership first contends that the partnership agreement's limit on the amount of additional capital contributions could be, and was, properly amended by a majority vote of the limited partners pursuant to the amendment procedure of Article 7.02. Fox counters that, because raising the cap on additional capital contributions was a "fundamental change" to the partnership agreement, it was not subject to Article 7.02, and it could be amended only by the unanimous consent of all partners. We agree with the partnership.

■ Our review of a judgment granting a motion for summary judgment is *de novo.* *Aspen Wilderness Workshop v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). Similarly, the correctness of legal conclusions based on undisputed facts is a question of law subject to review on appeal. *Evans v. Romer,* 854 P.2d 1270 (Colo.1993); *Frank C. Klein & Co. v. Colorado Compensation Insurance Authority,* 859 P.2d 323 (Colo.App.1993).

■ Interpretation of a written contract is also a question of law for the court. Contracts should be construed to give effect to the intent of the parties. If a contract is unambiguous, intent must be determined from the contract language itself, and effect must be given to every provision, if possible. *In re Marriage of Thomason,* 802 P.2d 1189 (Colo.App.1990).

■ Moreover, "[o]ne of the most reliable indications of the true intent of the parties to a contract is their behavior and interpretation of the contract before a controversy arises." *Blecker v. Kofoed,* 672 P.2d 526, 528 (Colo.1983).

Article 7.02, which sets forth the procedure for making all non-routine amendments to the partnership agreement, expressly bars only those amendments which would "deprive" the general partner of its interest, or any compensation or reimbursement due to it. This is the full extent of its limitation. Nothing in Article 7.02 or Article 4.09 suggests that Article 7.02 is not the proper procedural vehicle for amending the additional capital contribution limit of Article 4.09. To the contrary, the foregoing exemptions from the amendment procedure of Article 7.02 demonstrate that the parties knew how to, and did in fact, exempt provisions of the partnership agreement from that amendment procedure and simply chose not to exempt Article 4.09.

This interpretation is supported by the parties' actions prior to this controversy. In 1986, the partnership, including Fox, voted for the first time to amend Article 4.09 to increase the cap on additional capital contributions. The proxy statement for that vote, under the heading "Amendment Procedure," expressly invoked Article 7.02 and stated that the approval of the majority of the limited partnership interests was necessary to approve the proposed amendments. Hence, it is of no consequence that the later vote happened to be unanimous.

Moreover, Fox has stipulated that, at that time, he did not assert that the amendment procedure of Article 7.02 could not be used to amend Article 4.09. *See Appling v. Ellendale 122 Property*, 718 S.W.2d 261 (Tenn.App.1986)(limited partners could not claim that certain expenses were partnership expenses for which they were not liable because they paid similar expenses in the past).

Finally, there is no convincing authority that the limit on the amount of limited partners' capital contributions is so fundamental that, as a matter of law, such limit cannot be altered, except by the unanimous consent of all limited partners. To the contrary, in *Diamond Parking v. Frontier Building Ltd.*, 72 Wash.App. 314, 864 P.2d 954 (1993), involving similar facts, a similar argument was rejected. There, as here, a limited partnership that was attempting to develop real estate faced the threat of foreclosure if it were unable to raise additional partnership funds. The partnership agreement required approval by 70% of the limited partnership interests to amend it. In an effort to raise the needed capital, 74% of the limited partnership interests voted to approve an amendment to the partnership agreement providing increased partnership interests to those partners contributing additional capital. Plaintiff there refused to approve the amendment or to make any additional capital contributions, and as a result, plaintiff's interest in the partnership was substantially diluted.

Plaintiff brought suit claiming, as Fox does here, that unanimous approval of the amendment was required. The court disagreed, holding that:

Having elected to join the partnership with this type of majority voting provision, Diamond cannot now complain merely because the partnership adopted an amendment of which he did not approve. Like all the partners, he was presented with a business decision as to whether to invest more money in hopes of salvaging an investment that was in financial difficulty. Having elected not to make any further investment, he has no legal cause of complaint for the reduction of his interest in the partnership.

*Diamond Parking v. Frontier Building, Ltd.*, 72 Wash.App. at 318, 864 P.2d at 957.

Here, similarly, having elected to join the partnership with the majority voting provisions of Article 7.02, Fox cannot now complain that the partnership adopted an amendment that he opposed. Nothing in the partnership agreement prevented a majority of the limited partnership interests from amending the cap on additional capital contributions in accordance with the procedure set forth in Article 7.02.

## II.

The limited partnership also asserts that the trial court erred in determining that the increase in capital contributions required by the amendment was improper because Fox's "promise" with respect thereto was not "set out in writing signed by the limited partner," as required by § 7–62–502(3), C.R.S. (1986 Repl.Vol. 3A). We also agree with this assertion.

We should note that, in 1986, § 7–62–502(3) was amended to add the provision in controversy. Colo.Sess.Laws 1986, ch. 62 at 456. This amendment was enacted some four years after the limited partnership agreement here was executed. Prior to this amendment, there was no requirement that a limited partner's obligation to contribute additional capital be in writing; the original CLPA merely required that such obligation be reflected in the limited partnership certificate that is to be filed with the secretary of state pursuant to § 7–62–201, C.R.S. (1986 Repl.Vol. 3A). *See* Colo.Sess.Laws 1981, ch. 77 at 436–437.

However, neither of the parties to this controversy has raised the issue of the propriety of applying the 1986 amendment to this pre-existing agreement. Both have assumed that that amendment can be and should be applied here. We will, therefore, treat that amendment as applicable, and because the latest amendment to the partnership agreement came after the adoption of the statutory amendment, it is that statute's requirement, and not the requirement of the original CLPA, that governs.

 Our primary task in construing a statute is to give effect to the intent of the General Assembly, and to discern intent, courts should look first to the plain meaning of the language of the statute. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo. 1991). If statutory language is clear and legislative intent appears reasonably certain, a court will not resort to other rules of statutory construction. *People v. District Court*, 713 P.2d 918 (Colo.1986). Further, the courts will not interpret a statute to mean that which it does not express. *Burns v. City Council*, 759 P.2d 748 (Colo.App. 1988).

Here, § 7–62–502(3) requires only that a limited partner's "promise ... to contribute" must be "set out in a writing signed by the limited partner." On its face, therefore, this statute will require specificity only to the extent that the "promise" is specific as to amount and time. If the promise limits a partner's obligation to a specific amount, the writing must reflect that specific limitation. If, on the other hand, there is no limitation or a present limitation is subject to change, the statute requires that the writing disclose those terms.

Here, the original partnership agreement, which was signed by Fox, set forth both the initial monetary limitation upon capital contributions, as well as provisions allowing that limitation to be increased, as we have already concluded. Whether the contents of the initial certificate of limited partnership were sufficient to comply with § 7–62–502(3) as it existed prior to its 1986 amendment is irrele-

vant. The written partnership agreement itself, which was signed by Fox, constituted a writing sufficient to comply with that amendment.

We conclude, therefore, that the increase in required capital contributions was authorized by the partnership agreement and that Fox's obligation to honor such increase was properly set forth in writing in that agreement, as required by § 7–62–502(3). Hence, Fox is required to make additional capital contributions, in accordance with the amended agreement, if and when called upon by the general partner to do so.

The judgment of the district court is reversed, and the cause is remanded to that court with directions to enter an appropriate judgment, consistent with the views set forth in this opinion, in favor of the limited partnership.

JONES and TURSI*, JJ., concur.